**June D. ROLLINGS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–984.**

United States Court of Veterans Appeals.

Argued April 19, 1995.

Decided May 26, 1995.

David L. Anderson, for appellant.

John C. Winkfield argued, and Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Adrienne Koerber, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

IVERS, Judge:

June D. Rollings, through counsel, appeals from a June 21, 1993, Board of Veterans' Appeals (BVA or Board) decision which denied her claim for entitlement to service connection for a bilateral knee disorder. *June D. Rollings*, BVA 93–12628 (June 21, 1993). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate and remand the decision of the BVA.

## I.

The appellant served on active duty in the United States Marine Corps from September 4, 1944, to February 12, 1946. Record (R.) at 13. The induction examination conducted in October 1942 did not note any knee problems. R. at 15–16. The examiner indicated that the appellant had a "deviation to right" but did not note what part of the anatomy was deviated. R. at 18. In a May 1944

examination the examiner noted under "spine and extremities" that the appellant had scoliosis which was not disqualifying. R. at 21. In November 1944, the appellant was hit by a military jeep. R. at 28. She was reported to have some tenderness over the second lumbar vertebra, and the examiner noted that the appellant was "hit across [the] lower back and was thrown foreward [sic]." *Id.* The next day she was described as "stiff but walking." *Id.* The discharge examination reported under "History of illness or injury" a "contusion [in the] region of [the] lumbar spine," with a notation that the appellant had an "occasional back ache." R. at 31–33. The spine and extremities were reported as normal. *Id.*

In 1982, the appellant applied for compensation for a back injury and bilateral knee injury. R. at 37. A statement from her ex-husband, who the appellant indicated was her treating physician from 1945–60, was submitted noting that she was diagnosed with "synovitis, knees, bilateral-chronic recurrent [with] minimal effusion." R. at 47. Synovitis is inflammation of a specific membrane with pain, "particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY [hereinafter DORLAND'S] 1649 (1988 27th ed.). No additional records were available. R. at 56. Private treatment records dated June 1980 from Dr. Ronald Saykaly were obtained which showed "minimal restriction in the lumbosacral region," and diagnosed patellar-femoral arthritis and traumatic arthritis of the axial skeleton. R. at 58–59. A December 1980 notation by Dr. Richard Gill indicated degenerative joint disease of both knees. R. at 38, 63. In July 1982, the Regional Office (RO) denied service connection for back and knee disorders. R. at 67.

In April 1990, the appellant attempted reopening of the knee disorder claim. R. at 74. She submitted medical certificates from Dr. Rollings, her former husband, which noted continuous treatment between 1947–59 with a diagnosis of post-traumatic arthritis of both knees; from Dr. James Butler noting treatment in 1989 with a diagnosis of degenerative arthritis in both knees; and a statement

from Dr. Gill noting that he had treated the appellant in 1980 for degenerative joint disease in both knees. R. at 81, 83, 84. In May 1990, the RO denied reopening of the knee disorder claim. R. at 89.

The appellant submitted a comprehensive medical reassessment from Dr. Saykaly dated March 1990 which noted advanced osteoarthritis. R. at 91–97. Osteoarthritis is noninflammatory degenerative joint disease. DORLAND'S at 1197. The appellant submitted a statement in support of her claim indicating that she had complained about her knees at the time of treatment in 1944, but that the doctors were primarily concerned about her back. R. at 102. She stated that her knees had never been the same since the accident and that she was forced to hire a housekeeper because she could not carry her children or go up and down the stairs. R. at 103. The RO denied reopening of the claim in August 1990. R. at 114. In August 1990, the appellant filed a Notice of Disagreement (NOD). R. at 119. A Statement of the Case (SOC) was issued. R. at 124.

The appellant submitted a letter from her housekeeper who had worked for her in 1946 and who stated that the appellant had had problems with her knees at that time, and that the appellant had attributed it to an accident in the military. R. at 130. The housekeeper also stated that Dr. Rollings always told the appellant that she would have problems with her knees later in life. R. at 130. A similar letter from a friend who had known the appellant since 1953 was submitted. R. at 131. The appellant appealed to the BVA. R. at 134. In January 1991, the RO denied reopening of the claim. R. at 137. A Supplemental SOC (SSOC) was issued. R. at 140. A hearing was held at the RO in April 1991 where the appellant testified that her knee pain had existed since the 1944 accident; that she had no problems with arthritis; that until her divorce from Dr. Rollings in 1960, he acted as her treating physician; and that the misplaced hospital report from 1944 had been located. The hearing officer informed her that if Dr. Rollings provided her with a more detailed statement it would assist her case. R. at 146, 147, 149, 152.

A friend of the appellant, Shirley Wolff, submitted a letter stating that the appellant had progressively deteriorating knee problems since her military discharge. R. at 156. A medical report dated June 1974, noted that the appellant had "multiple changes of both knees on x-ray." R. at 160. Dr. Rollings submitted a statement stating that the appellant had knee problems in 1946 during her pregnancy as a result of the weight gain which required that she use "elastic supports to keep her from falling and miscarriage." R. at 163. Duplicates of prior medical statements were submitted. R. at 164.

In June 1991, the hearing officer found that new and material evidence had been submitted to reopen the back claim and granted service connection for the back claim. R. at 167. With regard to the knee claim, he found that new and material evidence had been submitted but denied the claim on the merits because of the absence of pertinent information in the service medical records. R. at 168. The appellant filed an NOD. R. at 171. An SSOC was issued. R. at 172.

In July 1991, Dr. Butler submitted a statement stating that the appellant's degenerative arthritis of the knees "could have been initiated by her jeep accident in 1944." R. at 177. An article about arthritis was submitted. R. at 178. The appellant submitted a statement that she had "proven the accident" happened in 1944 and had provided five doctors' statements about her problems. R. at 187. A letter from Dr. Saykaly was submitted which stated:

> [I]t is my understanding the patient was injured in a jeep accident in 1944 when she was hit from the back [by] a jeep, thrown eight (8') feet, landing on her knees. Despite early lack of radiographic evidence for damage, it is clear she has had progressive chondromalac[i]a patellae and osteoarthritis of the knee. Undoubtedly, this disorder can result from prior trauma. Certainly, although asymptomatic for years, the [word not legible] for future damage could well have originated with this accident.
>
> Without other identifiable causes, it is quite probable that the trauma has con-

tributed to the patient's knee and back problems in later years.

R. at 195. Chondromalacia patellae is the premature degeneration of the patellar cartilage, where the patellar margins are tender so that pain is produced when the patella is pressed against the femur. DORLAND'S at 326.

In July 1991, the VA conducted an examination on the appellant's back. The examiner diagnosed the appellant with status post injury to the lower back, arthritis of the lumbosacral spine (mild), and full range of motion of the lumbar spine. R. at 201. The knee condition was not evaluated. The physician stated:

> She walks straight, without evidence of limping. She is able to stand on the toes & heels, without apparent pain. She refused to do the squat, claiming pain of the knees. . . .

R. at 200–01. In October 1991, the RO granted service connection for the back disorder (rated as 10% disabling), and denied service connection for the knee condition. R. at 213. The appellant filed a statement stating that her major problem is the pain in her knees. R. at 215. The appellant submitted additional copies of previously submitted records which evidenced her accident in service. R. at 222–23. In December 1991, the RO denied reopening of the claim. R. at 226. A statement was submitted by Lt. Colonel (Retired) Robert Smith. He stated that he had known the appellant and her husband since 1945 when they were at Camp Lejeune, North Carolina, and that he had always been aware of her knee pain and discomfort as a result of the accident. R. at 236. In February 1992, the RO denied reopening of the claim for a bilateral knee disorder. R. at 239. An NOD was filed by the appellant and an SSOC was issued. R. at 241, 242.

On June 21, 1993, the BVA reopened the claim and issued a decision on the merits of the claim. The BVA denied service connection for a bilateral knee disorder because no problems were noted on the discharge examination and because the appellant had not complained of a knee disorder until 1974. The Board stated:

Inasmuch as this clinical evidence is some 30 years after the service incident, it is too removed in time from the alleged source to be etiologically related thereto.

*Rollings,* BVA 93–12628, at 3–5.

## II.

■ The appellant claims that her bilateral knee disorder was caused simultaneously with her service-connected lower back injury. Pursuant to 38 U.S.C. § 7104(d)(1), a decision of the Board must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record...." This Court has held "that the BVA articulate with reasonable clarity its 'reasons or bases' for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert v. Derwinski,* 1 Vet. App. 49, 57 (1990); *see Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *see Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992). Where the Board fails to fulfill this duty, the Court is precluded from effectively reviewing the adjudication. *Meeks v. Brown,* 5 Vet. App. 284, 288 (1993); *Browder v. Brown,* 5 Vet.App. 268, 272 (1993). For the reasons set forth below, the Court holds that the BVA did not provide "reasons or bases" for denying the veteran's claim based on all the evidence presented.

■ Here, the BVA decision failed to include an analysis of the credibility or the probative value of Dr. Saykaly's statement regarding the appellant's knee condition and its causation. R. at 195. The Board simply stated that the appellant had not incurred a knee injury in service. However, the Board did not consider whether the appellant incurred a knee disorder secondary to trauma in service, as discussed by Dr. Saykaly. The Board erred by not providing reasons or bases for refuting Dr. Saykaly's medical opinion that the appellant's current knee disability could be etiologically related to inservice trauma many years earlier. The Board erred by refuting the medical opinion and simply stating that the appellant had no "objective clinical evidence" of a knee injury contemporaneous with service and that clinical evidence of arthritis 30 years later is too remote to be etiologically related to the accident. In *Colvin v. Derwinski,* 1 Vet.App. 171 (1991), we held that the Board may not substitute its own medical judgment for independent medical evidence. *See also Cosman v. Principi,* 3 Vet.App. 503, 506 (1992); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (*Hatlestad II* ); *Budnik v. Derwinski,* 3 Vet.App. 185, 187 (1992); *Quarles v. Derwinski,* 3 Vet.App. 129, 139 (1992); *Tobin v. Derwinski,* 2 Vet.App. 34, 39 (1991). While the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Id.; see also Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991) (*Hatlestad I* ); *Gilbert,* 1 Vet.App. at 57; *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990).

■ For a veteran to be service connected for a disease or injury, the appellant must demonstrate (1) that the disease or injury was incurred in or aggravated by service, 38 U.S.C. § 1110, 38 C.F.R. § 3.303 (1994); or (2) that a certain disease or injury manifested to a degree of 10% or more within one year post-service. 38 U.S.C. § 1112(a)(1), 38 C.F.R. § 3.309(a) (1994). In her pleadings and at oral argument, the appellant argued that her symptoms manifested within one year post-service, and therefore, the presumptions of service connection should apply. The appellant submitted numerous medical notations from her treating physicians. The Secretary did not dispute that the accident occurred, and that the appellant was hit by a jeep and was "thrown forward." Dr. Rollings submitted several statements, one diagnosing the appellant with synovitis and the second statement diagnosing the appellant with post-traumatic arthritis. The VA's statutory "duty to assist" the veteran under 38 U.S.C. § 5107(a) to develop the facts pertinent to her claim must extend the liberal reading given to an appellant's substantive appeal "to include issues raised in all documents or oral testimony

submitted prior to the BVA decision." *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). Consequently, the BVA did not support its decision based on all the evidence the appellant presented to the Board. There is no evidence that the Secretary has ever provided the appellant with an examination with respect to her bilateral knee disability, and no examiner has rendered a medical opinion on the etiology of the knee disability or on the question whether the appellant may have been clinically asymptomatic for knee trauma during service as a result of the jeep accident which is the proximate cause of her current back disorder. *See Suttmann v. Brown,* 5 Vet.App. 127, 138 (1993). On remand, the BVA must address all relevant medical evidence and provide adequate reasons or bases for its evaluation of the credibility and weight of that evidence. *Hatlestad II, Colvin, all supra.*

## III.

The Court recognizes the invaluable contribution of the appellant's counsel, David L. Anderson, Esquire, of O'Connor & Hannan, who represented the appellant on a pro bono basis. His representation, as well as that of other attorneys representing veterans on a pro bono basis, through the Veterans Consortium Pro Bono Program or otherwise, enhances the quality of representation of veterans before this Court and is to be commended.

## IV.

For the reasons stated above, the June 21, 1993, decision of the BVA is VACATED and the matter is REMANDED.