**Gerald G. HAYES, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–323.**

United States Court of Veterans Appeals.

April 10, 1996.

Gerald G. Hayes, pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Joan E. Moriarty, Washington, DC, were on the pleading for the appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

IVERS, Judge:

Gerald G. Hayes appeals a February 15, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied his claims for (1) an increased evaluation for residuals of frozen feet (currently rated as 10% disabling); (2) restoration of a 10% rating for pulmonary embolus; (3) an increased rating for thrombophlebitis of the right leg (currently rated as 10% disabling); (4) service connection for degenerative arthritis of multiple joints; and (5) service connection for a gastrointestinal disorder. *Gerald G. Hayes*, BVA 94–01597 (Feb. 15, 1994). The Secretary filed a motion for summary affirmance as to issues one, three, four, and five, and to remand the issue of entitlement to a restoration of a 10% disability rating for a pulmonary embolus. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the reasons stated below, the Court affirms the BVA decision as to the issues of frozen feet and a stomach disorder, vacates and remands as to the issues of thrombophlebitis of the right leg and arthritis of multiple joints, and reverses as to the issue of a pulmonary embolus. In the same BVA decision, the Board granted an increased rating for post-traumatic stress disorder (rated as 30% disabling) and traumatic arthritis of the ankles (rating not provided). These claims are not currently before this Court.

## I.

The appellant served in the U.S. Armed Forces from February 1943 to December 1945. He was held by the enemy as a prisoner of war (POW) from November 1944 to May 1945. Record (R.) at 39, 56. The service medical records (SMRs) indicate that the appellant was admitted to the hospital with frostbite of his feet which developed while he was a POW. The treating physician recommended that the appellant be given a certificate of disability for discharge. R. at

39. Immediately after discharge, the appellant was service connected for frozen feet, initially rated as 100% disabling (R. at 62–63) and then gradually reduced until a 10% rating was assigned in a May 1955 decision. R. at 149–50. In 1979, he had a life-threatening incident involving a pulmonary embolus which was found to be secondarily related to his frozen feet disorder. R. at 178, 190. A pulmonary embolus is a mass of clotted blood or air brought via the blood circulation from one vessel to the lung, thus obstructing circulation. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 542, 1386 (28th ed. 1994) [hereinafter DORLAND'S]. In a September 1979 decision, the regional office (RO) granted service connection for the pulmonary embolism (rated as 10% disabling). The frozen feet disorder continued to be rated as 10% disabling. R. at 178. The appellant filed a Notice of Disagreement (NOD) and a Statement of the Case (SOC) was issued. R. at 182–83. VA further developed the case, during which the issue of thrombophlebitis of the right leg was raised. Thrombophlebitis is inflammation of a vein associated with a thrombus (vascular obstruction as a result of entrapment of blood and cell elements). DORLAND'S at 1707–08. In September 1981, the RO granted service connection for thrombophlebitis of the right lower extremity (rated as 10% disabling), and continued the rating for a pulmonary embolus and frozen feet (both rated as 10% disabling). R. at 252.

In June 1982 the appellant was advised by his treating physician, Dr. Albert Saloom, to stop working because walking and driving were increasing the severity of his condition. R. at 260. Dr. Richard Lynn submitted a letter dated May 1983 stating that the appellant was unable to maintain employment which required driving long distances because of the potential for a pulmonary embolus secondary to phlebitis in his right leg. R. at 340. Phlebitis is inflammation in a vein and is manifested by edema (swelling), stiffness, and pain in the affected area. DORLAND'S at 1279. The appellant attempted to obtain increased ratings, and in May 1983, the BVA remanded the case to the RO for a VA medical examination. R. at 271. VA conducted further medical studies, but the record does not indicate that any VA physician commented on the appellant's ability to maintain employment. R. at 275–81. The RO in November 1983 continued the ratings at 10% for each of the appellant's disabilities. R. at 282.

In June 1984, the appellant requested an increase in his ratings, and VA conducted a POW protocol examination. R. at 293. The examiner stated, inter alia, that the appellant had "subjective residual [of] frozen feet bilaterally," bilateral chronic venous insufficiency (right greater than left), pulmonary embolus secondary to a deep venous thrombosis of the right lower extremity, and multiple joint arthralgia. R. at 312. Thrombosis means the formation or presence of a thrombus. DORLAND'S at 1707. Arthralgia means pain in a joint. Id. at 140. In September 1984, the RO denied an increase in the appellant's ratings. R. at 324. A May 1985 BVA decision denied the appellant's claim for a rating in excess of 10% for residuals of frozen feet and thrombophlebitis of the right leg. R. at 344–50. An August 1986 VA examination for compensation and pension repeated the earlier diagnoses of subjective residuals of hypothermia of both feet, history of thrombophlebitis, and pulmonary embolus. R. at 355. The RO continued the same ratings. R. at 361.

In January 1987, the appellant appeared at a hearing and testified that his various disabilities had resulted in a grant of Social Security benefits and that he should have increased ratings for his service-connected residuals of frozen feet and phlebitis which had caused a pulmonary embolus. R. at 376–86. He also testified that he had high blood pressure, an "arthritic condition," and stomach problems as a result of his POW experience. R. at 385–87. The RO, in February 1987 and December 1987, continued the 10% rating for bilateral frozen feet, thrombophlebitis of the right leg, and pulmonary embolus, and denied service connection for hypertension, arthritis of the joints, and an "abdominal condition." R. at 391, 449. However, the RO granted service connection for post-traumatic stress disorder (rated as 10% disabling). R. at 449. The appellant appealed the denial of increased ratings for bilateral frozen feet and thrombophlebitis of

the right leg. The BVA denied increased ratings for frozen feet and thrombophlebitis. R. at 459.

In February 1990, the appellant again sought service connection for "arthritis" and a "gastrointestinal" disorder. R. at 465. He subsequently added claims for rating increases for all of his service-connected disabilities. R. at 468. Outpatient treatment records were received showing treatment from March 1989 to April 1990 for various conditions. R. at 472–81. A VA examination was conducted in May 1990. R. at 501. The VA physician found no symptoms of thrombophlebitis or pulmonary embolus and noted that no further studies were needed. R. at 501. A psychiatric examination was also conducted. R. at 503.

In July 1990, based on the VA examination, the RO denied service connection for arthritis and a gastrointestinal condition, continued the 10% rating for frozen feet, and reduced the ratings for service-connected pulmonary embolus and thrombophlebitis from 10% to 0%. R. at 507–09. The RO gave the appellant 60 days to respond. R. at 512. The appellant filed an NOD in September 1990. R. at 515. An SOC was issued. R. at 529. The effective date of the reduction was January 1991. R. at 512. The appellant submitted a letter dated January 1991 from his private physician, Dr. Richard Lynn, which noted the 1979 incident of a pulmonary embolus secondary to the right leg thrombophlebitis, reported continued pain and swelling in the right leg and severe osteoarthritis of the right knee, and noted that it was difficult to distinguish which of the two diagnoses was causing the "majority of his symptoms at any given time." R. at 537. Osteoarthritis is noninflammatory degenerative joint disease characterized by degeneration of cartilage and bone with changes in the membranes. DORLAND's at 1199. In support of the appellant's claims for a greater rating for his pulmonary embolism, Dr. Lynn stated:

> ... Mr. Hayes in 1979 had a near fatal pulmonary embolus and at that time had venographic evidence of severe deep vein thrombophlebitis involving the right lower extremity. Repeat venography at a later date again revealed some residual thrombus and venous dilatation in the deep venous system of the right lower extremity. He was maintained on outpatient anticoagulation with Coumadin for a prolonged period of time and then the Coumadin was discontinued and he was prescribed Jobst compression stockings to reduce the amount of venous pooling in the dilated veins of his right lower extremity with the hopes of preventing further deep vein thrombosis and subsequent pulmonary emboli.

R. at 537. Dr. Lynn noted that the appellant's condition had improved because the appellant had complied with his advice to remain off his feet and to use compression stockings. Id. Dr. Lynn suggested that, if VA disputed his findings, VA could conduct special studies, such as "venous outflow measurements using photopletysmography along with venous doppler and duplex scanning of the right lower extremities" to determine the blood flow in the legs. R. at 538. Doppler and duplex studies encompass the process of visualizing deep structures of the body by recording reflections of pulses of ultrasonic waves directed at or into the tissues. DORLAND's at 503, 1773.

The appellant testified at a hearing in April 1991 that he had been granted a total disability rating from Social Security since 1983, that POW experiences caused or aggravated current physical conditions, that VA had conducted cursory medical examinations in determining whether to increase or decrease his ratings, and that the VA examiner was unsympathetic to the plight of former POWs. R. at 549–57. The hearing officer ordered another examination. R. at 555. The new VA examiner ordered x-rays of the chest, which were normal, and diagnosed degenerative joint disease of the right knee. R. at 560–61. The examiner stated that no gastrointestinal disorder or residuals of thrombophlebitis was found. R. at 563–64. More outpatient reports were submitted showing treatment in 1991. R. at 571–85. These included x-rays which showed post-traumatic arthritis in the ankles. R. at 578–79. In February 1992, the hearing officer reinstated the 10% rating for thrombophlebi-

tis, confirmed the reduction to 0% for the pulmonary embolus, and confirmed the denial of service connection for arthritis and a stomach disorder. R. at 593. The RO confirmed the decision of the hearing officer. R. at 596–97. The appellant filed an NOD and a supplemental SOC was issued. R. at 599–604. The appellant's service representative claimed the VA examination was incomplete because the testing recommended by Dr. Lynn to examine the blood flow in the right leg was not done before determining not to reinstate his 10% rating for a pulmonary embolus. R. at 606.

On February 15, 1994, the BVA granted service connection for, inter alia, traumatic arthritis of the ankles (rating not provided), denied service connection for multiple joint degenerative arthritis and a stomach disorder, and denied increased ratings for frozen feet, a pulmonary embolus (rated as 0% disabling), and right leg thrombophlebitis (rated as 10% disabling). *Hayes,* BVA 94–01597, at 17–18. The appellant filed a timely appeal with this Court.

## II.

■ Section 1112(b) of title 38, U.S.Code, provides that, if a former POW contracts any of fifteen enumerated "diseases" "to a degree of 10 percent or more after active military, naval, or air service[, it] shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of such disease during the period of service." Determinations regarding whether a particular disability was incurred in or aggravated by service and the degree of impairment for purposes of rating such a disability are findings of fact. *Francisco v. Brown,* 7 Vet.App. 55, 57–58 (1994); *Harrison v. Principi,* 3 Vet.App. 532, 533 (1992); *Stegman v. Derwinski,* 3 Vet. App. 228, 229–30 (1992); *Lovelace v. Derwinski,* 1 Vet.App. 73, 74 (1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). Factual findings of the BVA are reviewed by this Court under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Francisco,* 7 Vet.App. at 57; *Gilbert,* 1 Vet. App. at 52–53. Under the clearly erroneous standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53. The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting material evidence submitted by or on behalf of the claimant. *Gabrielson v. Brown,* 7 Vet.App. 36, 40 (1994); *Gilbert,* 1 Vet.App. at 57.

### A. Claims for Frozen Feet and a Stomach Disorder

■ There is clearly a plausible basis for the Board's decision to deny an increased rating for frozen feet and to deny service connection for a gastrointestinal disorder. As to the issue of a stomach disorder, no examiner has noted any problems or rendered a diagnosis regarding a stomach disorder. Although the appellant as a lay person can certainly provide an account of symptoms he experiences, the appellant is not competent to provide a medical diagnosis. *See Falzone v. Brown,* 8 Vet.App. 398, 403, (1995) (appellant's statements relating to continuity of symptomatology are material to the issue of a possible worsening of severity of symptoms during service); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992).

■ With regard to the claim for frozen feet, pursuant to 38 C.F.R. § 4.104, diagnostic code (DC) 7122 (1995) (residuals of frozen feet), a 10% rating is awarded for residuals of frozen feet with mild symptoms unilateral or bilateral. A 30% rating requires bilateral persistent moderate swelling, tenderness, or redness, unilateral persistent severe symptoms and loss of toes or parts. *Ibid.* Physi-

cians have indicated that the appellant had frozen feet by history. It is the appellant, rather than a medical examiner, that opines as to any increase in severity of bilateral frozen feet. The appellant's own physician, Dr. Lynn, on the other hand, has attributed the appellant's right leg swelling, redness, and intermittent tenderness to a combination of phlebitis and osteoarthritis rather than to bilateral frozen feet (R. at 537). *Grottveit and Espiritu, both supra* (lay person not qualified to provide a medical diagnosis). The Court will affirm these portions of the BVA decision.

### B. Claim for Degenerative Arthritis of Multiple Joints

■ With regard to the denial of service connection for degenerative arthritis of multiple joints, the Court holds that no plausible basis exists in the record for the BVA decision. Thus, this portion of the BVA decision is clearly erroneous. When a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes. 38 C.F.R. § 4.2 (1995); *see Seals v. Brown,* 8 Vet.App. 291 (1995). In this case, the record does not contain a thorough medical evaluation of the appellant's osteoarthritis of the joints, specifically the knees. The Board, therefore, did not possess sufficient medical data to determine (1) whether the appellant's service-connected traumatic arthritis of the ankles is related to his current osteoarthritis of the knees; and (2) whether the osteoarthritis of the knees is related to the appellant's other medical conditions (or his POW status) in any way which would confer a rating. The Court finds that a remand is necessary so that the Board, prior to determining whether service connection is warranted, may obtain a medical opinion. *Rollings v. Brown,* 8 Vet. App. 8, 12 (1995); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (*Hatlestad II* ); *Budnik v. Derwinski,* 3 Vet.App. 185, 187 (1992); *Quarles v. Derwinski,* 3 Vet.App. 129, 139 (1992); *Tobin v. Derwinski,* 2 Vet. App. 34, 39 (1991); *Colvin v. Derwinski,* 1 Vet.App. 171 (1991). *See* 38 U.S.C. § 1112(b)(12); *Seals, Douglas, and Gilbert, all supra.*

### C. Claim for Pulmonary Embolus

■ The Secretary concedes that the issue of restoration of a 10% rating for a pulmonary embolus should be remanded for the Board to more fully comply with this Court's recent decision in *Kitchens v. Brown,* 7 Vet.App. 320 (1995). In *Kitchens,* this Court held that the Board violated 38 C.F.R. § 3.344(a) (1995) (stabilization of disability evaluations) in improperly reversing the standard of proof by requiring the appellant to prove entitlement to restoration of his previous 100% rating for his service-connected disorder. *Kitchens,* 7 Vet.App. at 325. Before a rating is reduced, the examination on which the reduction is based must be at least as full and complete as the examination upon which the appellant's rating was originally awarded. *See* 38 C.F.R. § 3.344(a). Although the Board recognized that a more thorough examination was required under section 3.344(a), the Board simply omitted the requirements of the regulation in providing the reasons or bases on which the reduction was based. *Kitchens, supra.* Where VA reduces the appellant's rating without observing applicable laws and regulations, the rating is void ab initio and the Court will set aside the decision as " 'not in accordance with the law.' " *Kitchens,* 7 Vet.App. at 325 (citing to 38 U.S.C. § 7261(a)(3)(A)). Therefore, the Court will reverse this portion of the BVA decision and remand with instructions to reinstate the appellant's prior 10% rating effective on the date of the reduction. In a future adjudication of this claim, should VA take a contradictory position to Dr. Lynn's report, then VA must include reasons or bases for not accepting Dr. Lynn's report. *Gabrielson,* 7 Vet.App. at 39; *Tobin,* 2 Vet. App. at 39; *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Gilbert* 1 Vet.App. at 56–57.

■ In addition, the BVA did not obtain a copy of the appellant's Social Security disability records which may contain evidence which is relevant to his VA claims. This Court has stated that "[w]hen VA is put on notice prior to the issuance of a final decision of the possible existence of certain records

and their relevance, the BVA must seek to obtain those records." *Murincsak v. Derwinski*, 2 Vet.App. 363, 373 (1992). As part of the Secretary's obligation to review a thorough and complete record, VA is required to obtain evidence from the Social Security Administration, including any decisions by the administrative law judge, and to give that evidence appropriate consideration and weight. *Id.* at 372; *see Collier v. Derwinski*, 1 Vet.App. 413, 417 (1991) (Social Security Administrations records are pertinent to the appellant's VA claim).

### D. Claim for Thrombophlebitis

■ With regard to the appellant's claim for an increased rating for thrombophlebitis, this issue must be remanded. The appellant requests a 60% rating for his right leg thrombophlebitis. Under 38 C.F.R. § 4.104, DC 7121, the prerequisites for a 10% rating are persistent moderate swelling of the leg not markedly increased on standing or walking. A 30% rating may be awarded where the appellant complains of persistent swelling of the leg or thigh, which is increased on standing or walking one or two hours, and which is "relieved by recumbency." *Id.* A 60% rating may be awarded where the appellant complains of "persistent swelling, subsiding only very slightly and incompletely with recumbency elevation with pigmentation cyanosis, eczema or ulceration." *Id.* Dr. Lynn stated that the appellant "has manifested only intermittent tenderness in the leg and this has been primarily because he has continued to use his compression hose" and that the appellant had been "careful about the amount of time spent in the upright position to reduce the effect of gravity on his leg." R. at 537. Dr. Lynn supported his medical conclusions by indicating that he had conducted specialized studies to evaluate the appellant's phlebitis, and that it was necessary for the appellant to monitor the time spent in the upright position. R. at 537. The record does not contain more recent results of specialized exams to refute the treating physician's medical assessment. From Dr. Lynn's description of the appellant's status, the appellant's symptoms may not fall within the scope of the 10% rating assigned by VA. In adjudicating the appel-

lant's claim for an increased rating, VA must respond to Dr. Lynn's assertions that the appellant's condition improved because of his compliance with Dr. Lynn's instructions to wear the stockings, and must provide reasons or bases why he is not within the 30% or 60% range. This Court has held that the Board may not substitute its own medical judgment for independent medical evidence. *Colvin*, 1 Vet.App. at 171; *Hatlestad*, 3 Vet.App. at 217. While the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more important, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Gabrielson*, 7 Vet.App. at 40; *Thurber v. Brown*, 5 Vet.App. 119, 122 (1993) (Board may reject a claimant's medical evidence only on the basis of other independent medical evidence); *Abernathy v. Principi*, 3 Vet.App. 461 (1992). The appellant is entitled to the benefit of the doubt. 38 U.S.C. § 5107(b); *Williams (Willie) v. Brown*, 4 Vet.App. 270, 273–74 (1993); *see Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991); *Gilbert*, 1 Vet.App. at 55.

### III.

Therefore, for the reasons stated above, the Secretary's motion is granted as to the claims for frozen feet and a stomach disorder, and those portions of the BVA decision are AFFIRMED. The Secretary's motion is denied with respect to the claims for thrombophlebitis and degenerative arthritis of multiple joints, and those portions of the BVA decision are VACATED and REMANDED. The Secretary's motion is denied with respect to the claim for a pulmonary embolus, and that portion of the BVA decision REVERSED with instructions to reinstate the 10% rating from the date of the reduction.