Citation Nr: 1607906 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 02-08 689 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for hypertensive heart disease, to include as due to herbicide exposure.

3. Entitlement to a finding of total disability based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARINGS ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

J. Davitian, Counsel


INTRODUCTION

The Veteran served on active duty with the United States Army from July 1967 to July 1969, to include service in the Republic of Vietnam.

These matters come before the Board of Veterans Appeals (Board) on appeal from May 2001, February 2011, and March 2011 rating decisions by the Waco, Texas, Regional Office (RO) of the United States Department of Veterans Affairs (VA).

The May 2001 decision denied service connection for hypertension. In a May 2004 decision, the Board denied service connection for hypertension; reconsideration of the decision was denied in June 2004. However, the Veteran appealed the Board's decision to the Court of Appeals for Veterans Claims (Court), which in June 2005, on the basis of a Joint Motion, vacated the Board's decision and remanded the matter for further consideration. The Board in December 2005 in turn remanded the matter to the RO via the Appeals Management Center (AMC) in Washington, DC, for further development.

The February 2011 decision denied service connection for a heart condition, while the March 2011 decision denied entitlement to TDIU.

The Veteran testified at January 2003 and June 2010 hearings before a Decision Review Officer (DRO) at the RO regarding hypertension. In August 2007 the Veteran requested a hearing before a Veterans Law Judge. However, in October 2007 the Veteran withdrew this request. Subsequently, in January 2010 the Veteran requested a hearing before a Veterans Law Judge. However, in March 2010 correspondence the Veteran converted this request to one for a DRO hearing. He has not requested a hearing of any type in connection with the heart and TDIU claims.

The case was again before the Board in June 2012 and July 2013 when it was remanded for further development.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required. The 


REMAND

The record before the Board contains an August 2004 Social Security Administration (SSA) Notice of Decision - Fully Favorable that found that the Veteran had been disabled since August 5, 2002. It noted that the Veteran had medically determinable severe impairment consisting of chronic feet pain due to severe tinea pedis, uncontrolled hypertension and moderate large airway obstruction. 

The record before the Board does not include the underlying employment or medical records relied on by SSA. Those records appear relevant to both of the Veteran's service connection claims and his TDIU claim. See Golz v. Shinseki, 590 F.3d 1317, 1323 (Fed. Cir. 2010). The duty to assist includes requesting information and records from SSA which were relied upon in any disability determination. Hayes v. Brown, 9 Vet. App. 67 (1996). In addition, there are heightened obligations to assure that the record is complete with respect to Federal Government records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

The SSA records are also relevant in light of a September 2013 VA PTSD Disability Benefits Questionnaire (DBQ). The DBQ provides the medical opinion that the Veteran met the criteria for TDIU. The rationale was that the Veteran's supervisors at Xerox consistently referred him to mental health care, per [the Veteran's own] report. Additionally, they refused to give him responsibility in managing people, and kept him isolated. In addition, the Veteran felt at times as if the traumatic events were recurring (flashbacks), which was one main complaint of his supervisors. The rational included Dallas VA medical records including mental health PA/APN outpatient notes dated from February 2009 to June 2013; a mental health history note dated January 2, 2009; and the June 2010 VA DRO hearing. In other words, the rationale for the positive VA medical opinion was ultimately based on the Veteran's own reports to VA care providers and a VA adjudicator. 

However, private medical records dated from 1991 to 1998 and the Veteran's Xerox personnel records reflect that he had employment problems due to his hypertension. During the January 2003 VA DRO hearing, the Veteran clearly asserted that he was let go from Xerox due to his hypertension. The contemporary private medical records, Xerox personnel records and hearing testimony are negative for any indication that any psychiatric symptoms or disability caused the Veteran's employment difficulties or termination. 

In light of the incongruity between these contemporary records and the medical opinion in the September 2013 VA PTSD DBQ, the Board finds that the medical and employment records relied on by SSA in making its August 2004 Decision would be particularly relevant to the Veteran's claims on appeal. See Golz, supra.

Furthermore, the inconsistencies between these contemporary records and the medical opinion in the September 2013 VA PTSD DBQ renders the latter medical opinion inadequate. Additional development is therefore required. See Barr v. Nicholson, 21 Vet. App. 303 (2007). VA should obtain an addendum medical opinion that addresses the contemporary medical and employment records pertaining to the Veteran's employment and termination at Xerox, as well as any medical and employment records obtained from SSA.

The opinion provided as part of the September 2013 VA heart examination is also inadequate because the rationale is insufficient. The examiner provided a negative opinion on the issues of service connection for hypertension and hypertensive heart disease and noted that "to date, there have been no large-scale studies that have showed an increase in hypertension due to posttraumatic stress disorder." That determination does not appear to take into account the National Academy of Sciences (NAS) Institute of Medicine's Veterans and Agent Orange: Update 2010 (2010 Update) which concluded that there is "limited or suggestive" evidence of an association between exposure to Agent Orange and hypertension. See Nat'l Acad. of Sci., Inst. of Med., Veterans & Agent Orange: Update 2010 (2011) at 694. The Secretary discussed the 2006, 2008, and 2010 Updates-which contain the same analysis with respect to hypertension-in the Federal Register. See e.g. 77 Fed. Reg. 47,924 -01 (Aug. 10, 2012) (noting "[i]n Veterans and Agent Orange: Update 2006 . . . and Update 2008, NAS elevated hypertension to the 'Limited or Suggestive Evidence' category"); 75 Fed. Reg. 32,540, 32,549 (June 8, 2010) ("In Update 2006, NAS concluded that there was 'limited or suggestive evidence of an association between exposure to the compounds of interest and hypertension.'"); 75 Fed. Reg. 81,332, 81,333 (NAS, in 2008, categorized certain health outcomes, including hypertension, to have '"limited or suggestive evidence of an association.' This category is defined to mean that evidence suggests an association between exposure to herbicides and the outcome, but a firm conclusion is limited because chance, bias, and confounding could not be ruled out with confidence."). Thus, the examiner does not provide an adequate rationale for his finding. 

Accordingly, the case is REMANDED for the following action:

1. Contact SSA and request a copy of all determinations either granting, denying or confirming an SSA award, as well as all medical and employment records relied upon in making the determinations.

Document the efforts made to obtain these records along with any negative responses.

2. Thereafter the Veteran should be afforded an appropriate VA examination to obtain an opinion regarding whether the Veteran's service-connected disabilities have affected his ability to work by assessing his occupational impairment, if any. All pertinent records, to include the contemporary medical and employment records pertaining to the Veteran's employment and termination at Xerox, as well as any medical and employment records obtained from SSA should be made available to the examiner for review. 

Based on the examination and review of the record, the examiner is asked to comment as to the functional impairment or limitations imposed by each of the Veteran's service-connected disabilities (PTSD; prostate cancer; residuals of shell fragment wound, left foot; tinea pedis; chloracne; and erectile dysfunction).

In doing so, the examiner is asked to take the Veteran's level of education, special training, and previous work experience into consideration, but disregard the Veteran's age or any impairment caused by nonservice-connected disabilities. 

The examiner is requested to provide a complete rationale for any opinion expressed, based on the examiner's clinical experience, medical expertise, and established medical principles. If an opinion cannot be made without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

3. Forward copies of all pertinent records from the Veteran's eFolders to the examiner who wrote the September 2013 VA heart DBQ (or a suitable substitute if that individual is unavailable) for an addendum. An additional examination of the Veteran should be scheduled only if deemed necessary to provide the requested opinion.

The examiner is requested to review the records and address the following: 

Is it at least as likely as not that the Veteran suffers from hypertension and/or hypertensive heart disease that is (a) related to his active service, (b) manifested within one year after discharge from active service in July 1969, or (c) is caused or aggravated by his service-connected PTSD The examiner should comment on the NAS Institute of Medicine's Veterans and Agent Orange: Update 2010 (2010 Update) document noted above which concluded that there is "limited or suggestive" evidence of an association between exposure to Agent Orange and hypertension. The examiner is informed that aggravation is defined for legal purposes as a chronic worsening of the underlying condition versus a temporary flare up of symptoms, beyond its natural progression. 

A complete rationale must be provided for all opinions. If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made. 

4. Thereafter, readjudicate the claim. If any issue remains denied, the Veteran and his representative should be issued a supplemental statement of the case, and given an opportunity to respond before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).