http://www.va.gov/vetapp16/Files6/1644973.txt

Citation Nr: 1644973 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 11-12 568 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Montgomery, Alabama

THE ISSUES

1. Whether new and material evidence has been received to reopen the claim of entitlement to service connection for a left shoulder disorder.

2. Entitlement to a disability rating in excess of 10 percent for a right elbow disability since June 27, 2014, and in excess of 0 percent prior to June 27, 2014. 

3. Entitlement to a disability rating in excess of 10 percent for a left elbow disability since June 27, 2014, and in excess of 0 percent prior to June 27, 2014. 

4. Entitlement to a disability rating in excess of 10 percent for right knee disability prior to August 20, 2013, in excess of 30 percent from August 20, 2013, to February 3, 2014, and in excess of 10 percent since February 3, 2014. 

5. Entitlement to a disability rating in excess of 10 percent for left knee disability prior to August 20, 2013, in excess of 30 percent from August 20, 2013, to February 3, 2014, and in excess of 10 percent since February 3, 2014. 

6. Entitlement to a disability rating in excess of 10 percent for a low back disability. 

7. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

REPRESENTATION

Appellant represented by: Disabled American Veterans 

WITNESSES AT HEARINGS ON APPEAL

Appellant and spouse

ATTORNEY FOR THE BOARD

L. Cramp, Counsel

INTRODUCTION

The appellant is a veteran (the Veteran) who had active duty service from May 1970 to October 1980 and from March 1981 to June 1995. 

This appeal comes before the Board of Veterans' Appeals (Board) from a February 2008 rating decision of the RO in Montgomery, Alabama.

The Veteran and his spouse presented testimony before RO personnel in January 2014. In March 2016, the Board remanded this appeal to afford the Veteran a Board hearing. In April 2016, the Veteran and his spouse presented testimony at a Board hearing, chaired via videoconference by the undersigned Veterans Law Judge and accepted such hearing in lieu of an in-person hearing before a Member of the Board. See 38 C.F.R. § 20.700(e) (2016). A transcript of the hearing is associated with the claims file.

The issue of TDIU entitlement is being considered in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009) (where there is evidence of unemployability raised by the record during a rating appeal period, the TDIU is an element of an initial rating or increased rating).

The Veteran submitted additional medical evidence after the most recent Supplemental Statement of the Case and waived his right to have that evidence considered in the first instance by the RO. 

The issues of entitlement to increased disability ratings for the back, knees, and elbows, and the reopened service connection claim for the left shoulder, are addressed in the REMAND below and are therein REMANDED to the RO via the Appeals Management Center (AMC) in Washington, DC. VA will notify the Veteran if further action is required.

FINDINGS OF FACT

1. The Veteran is unable to secure or follow a substantially gainful occupation due to his service-connected disabilities. 

2. The RO initially denied a claim of entitlement to service connection for a left shoulder disorder in an April 1996 rating decision on the basis that there was no injury or disease in service and the claim was therefore not well-grounded. 

3. Since the April 1996 rating decision, the evidence includes service treatment records substantiating treatment in service for left shoulder symptoms, as well as the Veteran's alternative allegations that a left shoulder disorder is proximately due to or a result of service-connected disabilities to include a right shoulder disability. 

CONCLUSIONS OF LAW

1. The criteria for TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.15, 4.16 (2016).

2. The criteria for reopening the claim of entitlement to service connection for a left shoulder disorder are met. 38 U.S.C.A. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156, 3.159 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

TDIU Claim

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340(a)(1), 4.15 (2016).

The term substantially gainful occupation is not specifically defined for purposes of the regulations governing TDIU. However, marginal employment is not considered substantially gainful employment. Marginal employment includes situations in which an individual's annual income does not exceed the poverty threshold for one person. Employment may be marginal even when the individual's earned income exceeds the poverty threshold if such individual is employed in a protected environment such as a family business or sheltered workshop. 38 C.F.R. § 4.16(a).

A total disability rating for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more. If there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and the combined rating must be 70 percent or more. 38 C.F.R. § 4.16(a).

A claim for a total disability rating based upon individual unemployability presupposes that the rating for the service-connected disability is less than 100 percent, and only asks for TDIU because of subjective factors that the objective rating does not consider. Vettese v. Brown, 7 Vet. App. 31, 34-35 (1994). In evaluating a veteran's employability, consideration may be given to his level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or impairment caused by non service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19 (2016).

In Hatlestad v. Derwinski, 1 Vet. App. 164 (1991), the Veterans Court referred to apparent conflicts in the regulations pertaining to individual unemployability benefits. Specifically, the Veterans Court indicated there was a need to discuss whether the standard delineated in the controlling regulations was an "objective" one based on the average industrial impairment or a "subjective" one based upon the veteran's actual industrial impairment. In a pertinent precedent decision, the VA General Counsel opined that the controlling VA regulations generally provide that veterans who, in light of their individual circumstances, but without regard to age, are unable to secure and follow a substantially gainful occupation as the result of service-connected disability shall be rated totally disabled, without regard to whether an average person would be rendered unemployable by the circumstances. Thus, the criteria include a subjective standard. It was also determined that "unemployability" is synonymous with inability to secure and follow a substantially gainful occupation. VAOPGCPREC 75-91.

Pertinent to the period on appeal in this case, service connection has been in effect for a psychiatric disability, rated at 50 percent since January 26, 2012 and 30 percent prior to January 26, 2012. Service connection has been in effect for an upper-gastrointestinal disability, right and left carpal tunnel syndrome, a right middle finger disability, radiculopathy of the lower extremities, a jaw disability, right and left ankle disabilities, a right shoulder disability, and a low back disability, each of which has been rated at 10 percent. A temporary total rating was assigned for the low back disability from February 26, 2016, to June 1, 2016, under 38 C.F.R. § 4.30. Service connection has also been in effect for bilateral knee disabilities, each of which have been rated at 10 percent, with the exception of a period from August 20, 2013, to February 3, 2014, during which ratings of 30 percent were assigned. Service connection has also been in effect for a chest wound and a burn scar of the right hand, each of which has been assigned a noncompensable rating. 

Thus, during the entire period on appeal, the Veteran has been in receipt of a combined rating of at least 90 percent. However, prior to January 26, 2012, he did not have a single disability ratable at 40 percent or more. Nevertheless, he had multiple disabilities affecting the upper and lower extremities which combined to meet the requirement of a single 40 percent disability pursuant to 38 C.F.R. § 4.16(a)(1). Accordingly, the schedular criteria for TDIU have been met for the entire period on appeal. The appeal thus turns on whether the Veteran's service-connected disabilities rendered him unable to secure or follow a substantially gainful occupation.

At the time of the March 5, 2007, claim, the Veteran was contending that he was disabled due to his lower extremity disabilities and that he was having difficulty sitting, walking, lifting, and driving. 

A May 24, 2007, letter from M. Leahy, MD, noted that, by his description, the Veteran was unable to meet demands at work. After reviewing the Veteran's job description, Dr. Leahy opined that the Veteran could not meet those demands (VBMS record 08/09/2007). 

A June 5, 2007, letter from A. Trout, MD, provides the opinion that the Veteran was permanently disabled from an aggregate of myofascial injuries (ongoing) osteoarthritis, depression, and generalized anxiety. Despite seeing many physicians, he had made no headway in accommodating to the degenerate muscle and joint changes and so was unable to consistently function at his job. Dr. Trout noted that he had known the Veteran since 2004 and his level of function had never improved significantly despite multiple interventions by multiple specialties. Dr. Trout continued "I believe he will remain totally disabled from his position as a cleanup equipment specialist indefinitely. Specifically: He will be unable to do overhead activities, lift objects, perform chronic repetitive motions, perform heavy labor, and tolerate exposure to the elements" (VBMS record 08/09/2007). 

A June 28, 2007, letter from J. Rosenfeld, MD, notes "At this point I do not anticipate any significant improvement and feel that he will remain totally disabled from his position as a cleanup equipment specialist. I do not see any prospect for return to gainful employment" (VBMS record 08/09/2007). 

A July 2, 2007, letter from B. Cargill, Ph.D., notes that, even aside from the Veteran's debilitating physical symptoms, he presents with significantly debilitating psychological symptoms. If considering the psychological symptoms alone, the Veteran could possibly continue to function in his current position. However when his physical and psychological conditions are considered in combination, the Veteran cannot render his duties efficiently as these conditions are fully disabling (VBMS record 08/09/2007). 

An undated letter from T. Kinkead, MD, received in November 2007 noted that the Veteran's multiple physical impairments were related to extensive physical work during his military career, and he had come to the point where he was unable to function at work and had great difficulty with work activities. According to Dr. Kinkead, the Veteran was unable to perform any type of physical labor and it was recommended that he obtain a sedentary job or retire due to his physical impairments. Dr. Kinkead opined: "It is not reasonable for him to continue on his current course due to his physical disabilities" (VBMS record 11/08/2007). 

A February 2008, letter from the Office of Personnel Management stated that the Veteran was found to be disabled for his position as a Cleanup Equipment Specialist due to osteoarthritis of multiple joints and a back condition (VBMS record 02/21/2008). 

In Moore v. Derwinski, 1 Vet. App. 356, 359 (1991), the United States Court of Veterans Appeals for Veterans Claims discussed the meaning of "substantially gainful employment." The Veterans Court noted the following standard announced by the United States Court of Appeals in Timmerman v. Weinberger, 510 F.2d 439, 442 (8th Cir. 1975): 

It is clear that the claimant need not be a total basket case before the courts find that there is an inability to engage in substantial gainful activity. The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful employment is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant.

After a review of all of the evidence, the Board finds that the evidence probative of the inability to secure or follow a substantially gainful occupation due to the combination of service-connected physical and psychiatric disabilities has attained relative equipoise with the evidence against the claim. Resolving all reasonable doubt in favor of the claim, the Board concludes that the criteria for TDIU are met for the entire period on appeal. 

Application to Reopen Service Connection for Left Shoulder

The RO initially denied a claim of entitlement to service connection for a left shoulder disorder in an April 1996 rating decision. Although notified of the RO's decision and of his right to appeal, the Veteran did not initiate an appeal of that decision (see 38 C.F.R. § 20.200 (2016)). The April 1996 rating decision is the last disallowance on any basis. See Evans v. Brown, 9 Vet. App. 273, 282-3 (1996), overruled on another basis by Hodge v. West 155 F.3d. 1356 (Fed. Cir. 1998) (the Board must review all evidence submitted by or on behalf of a claimant since the last disallowance on any basis to determine whether a claim must be reopened). 

VA may reopen a claim that has been previously denied if new and material evidence is submitted by or on behalf of a veteran. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a). The Veteran requested to have the previously denied claim reopened in March 2007. New evidence is defined as evidence not previously submitted to agency decision makers and material evidence is evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim(s) sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

Where new and material evidence is received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed, it will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. 38 C.F.R. § 3.156(b). 

At any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim. 38 C.F.R. § 3.156(c).

To reopen a claim, it is not required that new and material evidence be received as to each previously unproven element of a claim. Where a prior denial was based on lack of current disability and nexus, newly submitted evidence of a current disability was, in concert with evidence already of record establishing an injury in service, new and material and sufficient to reopen the claim and obtain an examination. See Shade v. Shinseki, 24 Vet. App. 100 (2010).

For purposes of the "new and material" analysis, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992).

At the time of the April 1996 rating decision, the RO determined that there was no evidence of an injury or disease of the left shoulder in service. It is unclear from the record when the service treatment records were received. Those records consist of multiple separate electronic files each marked as received July 10, 2015. This date is unlikely to be the actual date of receipt as service treatment records were discussed by the RO with respect to other claims prior to this date. Therefore, it is unclear whether 38 C.F.R. § 3.156(c) applies. 

Nevertheless, these records reveal treatment for complaints of left shoulder symptoms in service which were not acknowledged in the April 1996 decision. As an injury or disease in service was an unestablished fact at the time of the April 1996 decision, and as this evidence addresses that fact, is neither cumulative nor redundant of evidence previously of record, and raises a reasonable possibility of substantiating the claim, the Board finds that new and material evidence has been received and reopening of the claim is warranted. 

Moreover, the April 1996 denial was solely on the basis of direct service connection. Since the April 1996 decision, the Veteran has made an alternative allegation that a left shoulder disorder is proximately due to or a result of service-connected disabilities to include a right shoulder disability. Accordingly, a secondary service connection theory of etiology must also be addressed. 

Duties to Notify and Assist

As the Board is granting the TDIU claim and is granting reopening of the service connection claim, the claims are substantiated and there are no further VCAA duties. Wensch v. Principi, 15 Vet App 362, 367-368 (2001); see also 38 U.S.C.A. § 5103A(a)(2) (Secretary not required to provide assistance "if no reasonable possibility exists that such assistance would aid in substantiating the claim"); VAOPGCPREC 5-2004 (the notice and duty to assist provisions of the VCAA do not apply to claims that could not be substantiated through such notice and assistance).

ORDER

TDIU is granted. 

Reopening of the claim of entitlement to service connection for a left shoulder disorder is warranted. 

REMAND

The Veteran testified at the April 2016 Board hearing that he is now receiving disability benefits from the Social Security Administration (SSA). A review of the claims file reveals that no attempt has yet been made to obtain his treatment records from that agency. 

When VA has actual notice of the existence of relevant SSA records, the duty to assist includes requesting those records from the SSA. See Golz v. Shinseki, 590 F.3d 1317, 1323 (Fed. Cir. 2010) (finding that VA must seek to obtain relevant records under 38 U.S.C. § 5103A when there exists a reasonable possibility that the records could help the veteran substantiate his claim for benefits); see also Murincsak v. Derwinski, 2 Vet. App. 363, 370 (1992) (finding VA's duty to assist specifically includes requesting information from other Federal departments). This duty extends to obtaining a copy of the SSA decision awarding or denying benefits. Id. at 371; Baker v. West, 11 Vet. App. 163, 169 (1998); Hayes v. Brown, 9 Vet. App. 67, 73-74 (1996). 

The duty to obtain records held by SSA is not limited to issues involving unemployability status or severity of service-connected disorders, but extends to claims for service connection. Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Even where the decision awarding SSA benefits was made years before a current claim, the records held by SSA may continue to have relevance, as SSA is obligated to discontinue disability benefits based on a change in a recipient's employability status, and SSA conducts periodic examinations to determine the employability status of recipients. Murincsak, 2 Vet. App. at 371.

In addition, the RO attempted to obtain VA examinations to evaluate the Veteran's lumbar spine disability and bilateral knee disabilities in January 2015. However, due to the recent spine surgery, the examiner concluded that the physical examination and range of motion testing for the back and knees could not be conducted, but would be rescheduled for a date after the Veteran was released by his physician from post-surgical convalescence. To date, these examinations have not been rescheduled. Records submitted by the Veteran pertain to his back and knee claims but do not provide such findings as would obviate the necessity of a VA examination. 

Finally, the Board has reopened the claim of entitlement to service connection for a left shoulder disorder, to include direct service connection, as related to the injury noted in the service treatment records, and on the basis that the disorder was caused or aggravated by favoring his left arm due to his service-connected right shoulder disability. These are questions that require medical opinion evidence. Therefore, a VA examination and medical opinion are necessary to address this claim as well. 
See McClendon v. Nicholson, 20 Vet App. 79, 81 (2006). 

Accordingly, the rating claims for the elbows, back, and knees, and the application to reopen service connection for a left shoulder disorder are REMANDED for the following action:

1. Request that the Veteran identify any outstanding VA or private medical records. Take appropriate efforts to obtain any records identified. 

2. Obtain all pertinent records in the possession of the Social Security Administration. Make notation in the claims file of all requests made and responses received. 

3. Schedule an appropriate VA examination to determine the current manifestations and severity of the Veteran's back and knee disabilities. The relevant documents in the claims file, including any relevant evidence received from SSA, should be made available to the VA examiner. The examiner is asked to make all findings necessary to address the rating criteria for the knees and to ensure that findings for active and passive range of motion are included, as well as findings for range of motion with weight-bearing and nonweight-bearing. 

4. Schedule an appropriate VA examination to determine the nature and etiology of the claimed left shoulder disorder. The relevant documents in the claims file should be made available to the VA examiner.

With respect to all currently diagnosed disorders of the left shoulder, the VA examiner is asked to offer an opinion as to whether it is at least as likely as not (i.e., to at least a 50-50 degree of probability) that such left shoulder disorder is causally or etiologically related to the Veteran's active service or to a service-connected disability. 

With respect to any finding that a diagnosed left shoulder disorder is not causally related to service or to a service-connected disability, the examiner is asked to offer an opinion as to whether it is at least as likely as not (i.e., to at least a 50-50 degree of probability) that such left shoulder disorder was permanently worsened beyond the natural progress of the disorder by a service-connected disability. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but that the medical evidence for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

All opinions are to be accompanied by a rationale consistent with the evidence of record. A discussion of the pertinent evidence, relevant medical treatises, and generally accepted medical principles is requested. If the examiner cannot provide an opinion without resorting to speculation, he or she shall provide complete explanations stating why this is so. In so doing, the examiner shall explain whether any inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

5. Readjudicate the remanded claims. If any benefit sought on appeal is not granted, the Veteran and his representative should be provided a supplemental statement of the case and an appropriate time period for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The Veteran is advised to appear and participate in any scheduled VA examinations, as failure to do so may result in denial of the rating claims. See 38 C.F.R. § 3.655 (2016). 

These issues must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

____________________________________________
JONATHAN B. KRAMER 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs