**Joseph T. BAKER, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

No. 96–1456.

United States Court of Veterans Appeals.

April 7, 1998.

Stephanie Forester, Barton F. Stichman, Washington, DC, were on pleadings for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Mary Ann Flynn, Washington, DC, were on pleadings for appellee.

Before IVERS, STEINBERG, and GREENE, Judges.

IVERS, Judge:

The veteran appeals from a July 5, 1996, Board of Veterans' Appeals (BVA or Board) decision which denied an increased rating for schizophrenia, paranoid, with a history of post-traumatic stress disorder (PTSD), currently rated 30% disabling. The Secretary has filed a motion for remand. The appellant seeks reversal and opposes the motion for remand. For the reasons stated below, the Court will vacate the BVA's July 5, 1996, decision and remand the matter.

## I. FACTS

The veteran served on active duty in the U.S. Army from May 1966 to May 1969, including service in Vietnam. Record (R.) at 16. The veteran's service medical records (SMRs) show that, in December 1968, he was seen for a psychiatric consultation. The veteran indicated that he had "always been tense and uncomfortable around people" and that he preferred to be alone. He stated that he had thought about suicide several times in the past and that his drinking brought out his deep-seated anger and resentment. He explained that, at night, he felt uncomfortable, "as if something is going to attack me." The impression was schizoid personality, moderately decompensated. R. at 32. His May 1969 separation examination contained no psychological complaints or findings. R. at 38–41.

From April 1970 to March 1971 the veteran was treated for anxiety and depression. R. at 60. In March 1971 he submitted an application for compensation or pension for, inter alia, a nervous condition. R. at 43–46. In March and April 1971 records from the VA hospital (VAH) in Pittsburgh, Pennsylvania, show that he was diagnosed with schizophrenia, paranoid type. R. at 48–51, 53–57. The veteran was noted to have had trouble

sleeping due to his dreams, to have used alcohol to control his "emotional turmoil," and to have attempted suicide. R. at 50. In May 1971 a VA doctor noted that many people use alcohol as a tranquilizer to keep secondary symptoms of schizophrenia from surfacing; "[h]owever, when they get to a place where it no longer acts as a tranquilizer, schizophrenic symptoms begin to occur. I think [the veteran] was right when he said 'he drank to control his symptoms.'... I also think he used alcohol as a tranquilizer." R. at 58–59. The veteran's June 1971 discharge report noted a diagnosis of schizophrenia, acute, reaction. Treatment included Thorazine, Haldol, and Kemadrin. R. at 64–65. Thorazine and Haldol are prescribed for the management of manifestations of psychotic disorders. PHYSICIANS' DESK REFERENCE 1575, 2523 (50th ed.1996). Kemadrin is used to relieve the symptoms of side effects which accompany the therapy of mental disorders. *Id.* at 1112.

In an August 1971 rating decision, the regional office (RO) granted service connection for schizophrenic reaction, paranoid type, competent, rated 70% disabling from July 1, 1971. R. at 68.

In a February 23, 1973, VA psychiatric examination for compensation purposes, the veteran was diagnosed with "schizophrenia, acute, presently in remission, present symptoms are a need for regular medication and intermittent difficulty irritability [sic]." R. at 70–71. In an April 1973 RO. decision, the veteran's disability rating for schizophrenic reaction, paranoid type, competent, was decreased to 50%, effective February 23, 1973. R. at 73.

After hospitalization for excessive drinking in 1974 (R. at 76), and a May 1975 VA psychiatric examination which included a diagnosis of chronic paranoid type schizophrenia in partial remission (R. at 80–81), the RO, in a June 1975 rating decision, decreased the veteran's disability rating to 30% for schizophrenic reaction, paranoid type, competent, effective September 1, 1975 (R. at 83).

A May 1981 VA psychiatric examination resulted in diagnoses of schizophrenia, paranoid type in remission and a history of episodic drinking. R. at 89. A June 1981 rat-

ing decision confirmed the 30% disability rating for the veteran's service-connected disability. R. at 92.

Records were received from the Tampa, Florida, VA Medical Center (MC) from November and December 1981. The November diagnosis was schizophrenia, paranoid type, and the veteran was admitted for psychiatric treatment. R. at 96. In December the veteran was discharged with diagnoses that included episodic alcohol abuse and passive dependent personality disorder. R. at 99. In a March 1982 RO decision the veteran's 30% disability rating was continued. R. at 102.

On October 5, 1982, the veteran testified that he had not worked since 1977. He explained that when he was around other people he would get confused, "dizzy-like," sweaty, and shaky, and forgetful. R. at 112–13. He revealed that he could no longer work for the ambulance service as it reminded him too much of when he served in the medical corps in Vietnam. R. at 114. He stated that he tried to find other jobs, but that everyone in town knew about his problems. R. at 115. He noted that he was receiving Social Security disability. R. at 117.

In an October 1982 VA psychiatric examination, the veteran was diagnosed with schizophrenia, paranoid type, chronic, active. R. at 123. On July 21, 1983, the BVA determined that the schedular provisions for an increased rating for a schizophrenic disorder, currently rated 30% disabling, were not met. R. at 125–29.

In July 1988 the veteran was diagnosed with antisocial personality disorder, malingering (compensation seeking), explosive disorder (rule out organic), and PTSD. R. at 136–37. In January, February, and March 1989 the veteran was diagnosed with PTSD, but showed no evidence of paranoid schizophrenia. He was prescribed Xanax. R. at 142–46. Xanax is indicated for the management of anxiety disorder or the short-term relief of symptoms of anxiety. PHYSICIANS' DESK REFERENCE at 2650.

The veteran was hospitalized at the Bay Pines, Florida, VAMC from April to June 1989. The diagnosis included:

Axis I. [PTSD], chronic evinced by depression, avoidant, isolative rigid, stubborn, fearful, volatile, defeated, emotionally constricted.

Axis II. Borderline personality disorder, self defeating and idiosyncratic. Rule out ethanol dependence in remission.

Axis III. Overweight. Difficulties with both feet (clawfeet and hammertoes).

Axis IV. Catastrophic, Vietnam.

Axis V. Markedly impaired, unable to sustain employment, tumultuous relationship with common-law wife.

R. at 147. Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. The general assessment functioning scale is between 1 and 100. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed.1994) [hereinafter DSM–IV]. In a July 1989 RO decision, the veteran's rating was increased from 30% to 100%, effective April 26, 1989, due to his hospitalization and decreased to 30% effective July 1, 1989. R. at 152.

In April 1990 the veteran underwent a VA psychiatric examination. The diagnosis was schizophrenic reaction. The examiner noted that the veteran was unemployed and in need of treatment. "The prognosis is guarded and at this time it is felt that he has PTSD based on the nightmares, social isolation, intrusive thoughts and flashbacks." R. at 156. In a May 1990 RO decision the veteran's 30% disability rating was continued. R. at 162.

The veteran was hospitalized from July 15 to July 22, 1991, at the Bay Pines VAMC. The Axis I diagnoses were alcohol intoxication and dependence, Valium abuse, and a history of PTSD. The Axis V diagnosis included a general assessment functioning (GAF) rating of 61 out of 100 and noted that the veteran worked part-time as an auto mechanic, lived in his own house, and had a girlfriend. R. at 165. The following was reported: The veteran was alert, but disoriented to time and date; he was tremulous and his affect was anxious; and he had no

delusions, hallucinations, and no homicidal or suicidal ideation and his memory and insight were fair, but his judgment was impaired. R. at 166. His unemployability was "undetermined." R. at 167.

In July 1991 the veteran submitted a statement indicating his desire to amend his claim to include PTSD. R. at 169. In an August 1991 RO decision, the 30% disability rating for his service-connected schizophrenic reaction was confirmed. The RO stated that no change was warranted in the evaluation of the veteran's service-connected psychiatric condition because his treatment in July 1991 was for alcoholism only. R. at 171.

The veteran was hospitalized at the Bay Pines VAMC from December 18 to December 30, 1991, for delirium tremens. The Axis I diagnoses included alcohol intoxication and dependence, Valium abuse, and alcohol and Valium withdrawal. The Axis V diagnosis included a GAF of 51. R. at 173. Valium is useful in acute alcohol withdrawal for symptomatic relief of acute agitation, tremor, impending or acute delirium tremens, and hallucinosis. PHYSICIANS' DESK REFERENCE at 2183. In a February 1992 RO decision, the veteran's 30% disability rating was continued. The RO concluded that the disability was due to the veteran's own willful misconduct—alcohol and Valium abuse. R. at 177.

In October 1992 the veteran submitted a Notice of Disagreement with records attached. R. at 203. The records included duplicate copies of records previously submitted. R. at 182–90, 196–98. Also submitted were records from July 1989 to September 1992 showing treatment for PTSD, paranoid schizophrenia, depression, irritability, anger, and anxiety. R. at 191–95, 199–201. In July 1991 a VA examining physician at a VA mental health clinic found the veteran unemployable. R. at 199. A Statement of the Case (SOC) was issued. R. at 205–10. The veteran submitted a substantive appeal regarding his claims for an increased rating for his service-connected schizophrenic reaction and service connection for PTSD. R. at 212–13.

The veteran underwent a VA psychiatric examination in November 1993. During the examination he revealed that he took Prozac, Valium, and Xanax. R. at 219. Prozac is indicated for the treatment of depression. PHYSICIANS' DESK REFERENCE at 920. During the mental status examination the examiner noted:

> He appears markedly anxious. There is some mild tremor. He has somewhat rapid movements at times, fidgety [sic] in his chair. He is cooperative with the examination. His affect is constricted. His mood is stable. His speech is of normal rate and volume and is relevant and coherent. There is no evidence of any tangentiality or looseness. There are no acute hallucinations. No evidence of responding to internal stimuli and no bizarre ideation or delusions [sic] noted at this time. No suicidal or homicidal ideation at this time. Cognitively relatively intact. The patient is considered competent for VA purposes. No additioanl [sic] testing recommended at this time.

R. at 220. The Axis I diagnoses included polysubstance abuse with benzodiazepine abuse, history of alcoholism ("suspect the patient is possibly still currently drinking)," a history of PTSD which was chronic and stable, and a history of psychosis. He was considered not to be psychotic at the time of the examination. R. at 221. Benzodiazepine is any of a group of minor tranquilizers, having a common molecular structure and pharmacological activity, including antianxiety, sedative, and muscle relaxing effects. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 192 (28th ed.1994). The Axis II diagnosis was a history of borderline personality disorder. The Axis IV diagnosis was "3/6, chronic enduring secondary to history of substance abuse, his [PTSD] and his personality disorder." R. at 221.

In a January 1994 rating decision, the RO noted that the veteran's PTSD diagnosis had been added to the diagnosis for service-connected schizophrenia. The RO determined that the 30% disability rating was confirmed and continued. R. at 223–26. A Supplemental SOC was issued. R. at 228–32. In February 1994 the veteran requested that his case be forwarded to the BVA as soon as possible. R. at 234.

On July 5, 1996, the BVA rendered the decision currently on appeal. The BVA determined that the criteria for a rating greater than 30% disabling for paranoid schizophrenia, with a history of PTSD, had not been met. R. at 4, 12.

## II. ANALYSIS

### A. Increased Rating

■ A claim for an increase is a new claim. *Spurgeon v. Brown,* 10 Vet.App. 194, 196 (1997); *Proscelle v. Derwinski,* 2 Vet. App. 629, 631–32 (1992). The Court reviews the Board's findings of fact regarding new claims and regarding the degree of impairment under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Simington v. West,* 11 Vet.App. 41, 43 (1998); *Zink v. Brown,* 10 Vet.App. 258 (1997); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Id.* The Board must base its decisions on "all evidence and material of record" and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(a), (d)(1); *Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting material evidence submitted by or on behalf of the claimant. *Id.* at 57; *see also Gabrielson v. Brown,* 7 Vet.App. 36, 40 (1994).

The BVA stated in its decision,

Medical treatment records include extensive records of VA[MC] hospitalization and treatment from 1971 to 1992 for schizophrenic reaction, other psychotic and psychoneurotic symptoms, and alcohol and drug abuse; VA psychiatric evaluations dated in February 1973, May 1975, May 1981, October 1982, April 1990, and No-

vember 1993; and a letter dated August 1980 from W.T. Booher, Jr., M.D., stating he had treated the appellant in 1979 and 1980 for chronic alcoholism and an unrelated disorder. These records indicate that appellant's primary cause of hospitalization and treatment was for excessive alcohol and drug abuse. None of the records indicate more than a definite impairment due to paranoid schizophrenia, or to PTSD. After carefully reviewing the evidence of record, it is the opinion of the Board that no more than a 30[%] evaluation is warranted for appellant's paranoid schizophrenia, with a history of PTSD. As previously stated, under Diagnostic Codes 9203 and 9411, a 30[%] evaluation is assigned for definite social and industrial impairment. The Board concludes that the recent clinical evidence does not show that the appellant's psychotic disability results in more than definite social and industrial inadaptability. 38 C.F.R. §§ 4.129, 4.132, Part 4, Codes 9203, 9411. The examiners have described it as no more than definite, and considerable significance has been accorded this evidentiary circumstance. The Board finds that the disability picture in question more nearly approximate the schedular criteria for a 30[%] evaluation than the next higher evaluation for the aforestated reasons. 38 C.F.R. § 4.7; and VA O.G.C. Prec. Op., Id.

The Board makes this determination after having reviewed the appellant's testimony, and the record. It is the conclusion of the Board that the events described do not show more than definite social and industrial impairment. The appellant has had a history of having many jobs. He reportedly was irritable, and had difficulty adjusting to crowds of people. He was described in a June 1989 VA[MC] record as having a "horrendous ethanol history." He tended to understate this condition and has never been formally treated for alcohol abuse. The VA examiner in November 1993 noted that the primary diagnosis for most of appellant's symptoms was polysubstance abuse, and a history of alcohol abuse. He had symptoms of PTSD which were stable, and he was not found to be psychotic at the time of his examination. The RO not-

ed that appellant's rating was protected by 38 C.F.R. § 3.951, and the symptoms exhibited were no more severe than currently evaluated. Thus, it is concluded that the evidence, when viewed in the context of the total record, does not provide a basis for an increased evaluation.

R. at 11–12.

Paranoid schizophrenia was rated under 38 C.F.R. § 4.132, Diagnostic Code (DC) 9203 (1995). The regulations in existence at the time of the BVA decision required definite impairment of social and industrial adaptability for a 30% rating. A 50% rating was warranted for considerable impairment of social and industrial adaptability. A 70% rating was warranted when symptomatology produced severe impairment of social and industrial adaptability. *Id.* The Court notes that since that time the regulations have changed. *See* 38 C.F.R. § 4.130, DC 9203 (1997).

PTSD is rated under DC 9411. Pursuant to the regulations in existence at the time of the BVA decision, a 30% disability rating for PTSD was warranted when there was a

> Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability levels as to produce definite industrial impairment.

38 C.F.R. § 4.132, DC 9411 (1995). A 50% rating was warranted when

> Ability to establish or maintain effective or favorable relationships with people is considerably impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in considerable industrial impairment.

*Id.* A 70% rating was warranted when

> Ability to establish and maintain effective [sic] or favorable relationships with people is severely impaired. The psychoneurotic symptoms are of such severity and persis-

tence that there is severe impairment in the ability to obtain or retain employment. *Id.*

The evidence of record supports the Board's finding that the veteran did not suffer from more than a definite impairment under either DC 9203 or 9411. He was considered competent for VA purposes in the November 1993 examination. There was no indication that he was unemployable due to his psychiatric problems. R. at 220. The Axis I diagnoses (in order) were: polysubstance abuse with benzodiazepine abuse; history of alcoholism; history of PTSD "chronic and stable"; and a history of psychosis, "not currently psychotic at this time." R. at 221. When an individual has more than one Axis I disorder, the principal diagnosis or the reason for the visit should be listed first. DSM–IV at 25. Pursuant to the regulations in existence at the time of the BVA decision here on appeal, the BVA decision as to the degree of disability was not clearly erroneous. *See* 38 U.S.C. § 7261(a)(4).

However, on January 6, 1997, the Secretary filed a motion for remand pursuant to 61 Fed.Reg. 52, 695 (1996) (to be codified at 38 C.F.R. § 4.13, 4.16, 4.125–4.132 (1996)). *See Cohen v. Brown,* 10 Vet.App. 128, 144, 152 (1997). The Secretary concedes that, in light of the amendments to the portion of the rating schedule pertaining to mental disorders, including PTSD, which went into effect on November 7, 1996, the appellant's claims should be adjudicated under the version of the regulations most favorable to him. The appellant filed an opposition to the Secretary's motion for remand, and a motion for summary reversal. On December 5, 1997, the appellant filed a motion for leave to file a supplemental response in which he waived application of *Karnas v. Derwinski,* 1 Vet. App. 308 (1991) (included with the motion) to the Secretary's motion for remand and the appellant's motion for summary reversal.

Although the new amendments became effective after the appellant filed his appeal with this Court, the Court and VA are required to apply the amendments to the extent that they are more favorable to the claimant than the earlier provisions. *Cohen, supra; see also Swann v. Brown,* 5 Vet.App.

229 (1993); *Hayes (Paul) v. Brown,* 5 Vet. App. 60, 66–67 (1993); *Karnas, supra.* It is not the function of this Court to make such a determination in the first instance. *Dudnick v. Brown,* 10 Vet.App. 79, 80 (1997). "[R]ather it is the function of this Court to decide whether such factual determinations made by the BVA ... constituted clear error." *Gilbert,* 1 Vet.App. at 53. Therefore, the Court will remand this matter. On remand, the Board will also address the appellant's contentions that his alcoholism was a part of his mental disorder on the ground that a VA psychiatrist had found in May 1971 that the appellant had used alcohol "as a tranquilizer" "to control his symptoms." R. at 59; Appellant's Response at 21–23; *see* 38 C.F.R. § 3.310(a) (1997) (secondary service connection). Finally, in view of the July 1991 finding by a VA examining physician at a VA mental health clinic that the veteran was unemployable (R. at 199), the Board will consider whether the appellant is entitled to an extraschedular rating in accordance with 38 C.F.R. § 4.16(b) (1997), or a total disability rating based on individual unemployability (TDIU) under 38 C.F.R. § 4.16(a) (1997), if he is given a service-connected rating of at least 60% on remand. *Romeo v. Brown,* 5 Vet.App. 388, 396 (1993). If his alcoholism is added to his service-connected rating, then that condition must also be considered in terms of an extraschedular rating or a TDIU rating.

### B. Duty to Assist

The Court notes that the veteran indicated that he was receiving Social Security Administration (SSA) benefits. R. at 117. However, the record does not show that the veteran's records were ever requested. These records may contain evidence relevant to the veteran's claims. "When VA is put on notice prior to the issuance of a final decision of the possible existence of certain records and their relevance, the BVA must seek to obtain those records." *Hayes (Gerald) v. Brown,* 9 Vet.App. 67, 73–74 (1996) (quoting *Murincsak v. Derwinski,* 2 Vet.App. 363, 373 (1992)). Part of the Secretary's obligation is to review a complete record. VA is required to obtain evidence, including decisions by administrative law judges from the SSA, and to give that evidence appropriate consider-

ation and weight. *Hayes (Paul), supra; see also Collier v. Derwinski,* 1 Vet.App. 413 (1991). VA failed in its duty to assist the veteran by not obtaining his SSA records.

### III. CONCLUSION

For the reasons stated above, the Court will grant the Secretary's motion for remand to the extent consistent with this opinion and deny the appellant's motion for reversal. The BVA's July 5, 1996, decision is VACATED and the matter is REMANDED for readjudication consistent with this opinion. A new decision must be supported by an adequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1) and *Gilbert,* 1 Vet.App. at 56–57.