Citation Nr: 1602622 
Decision Date: 01/28/16 Archive Date: 02/05/16

DOCKET NO. 12-11 691 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Whether new and material evidence has been received with respect to a claim of service connection for residuals of histoplasmosis, to include total legal blindness.

2. Entitlement to service connection for a respiratory disorder, to include as secondary to asbestos exposure during service or alternatively as secondary to claimed residuals of histoplasmosis.

3. Entitlement to service connection for bilateral hearing loss, to include as secondary to service-connected tinnitus.

4. Entitlement to service connection for pharyngitis.


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

M. Peters, Counsel


INTRODUCTION

The Veteran had active duty service from August 1957 to August 1961.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from December 2010 and June 2011 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO), which denied service connection for residuals of histoplasmosis, pharyngitis, bilateral hearing loss, and a respiratory condition. The Veteran timely appealed those decisions. 

The Veteran testified at a Board hearing before a Veterans Law Judge in August 2015; a transcript of that hearing is associated with the claims file. The law requires that the Veterans Law Judge who conducts a hearing on appeal must participate in any decision made on that appeal. 38 U.S.C.A. § 7107(c) (West 2014); 38 C.F.R. § 20.707 (2015). In November 2015, the Board sent a letter to the Veteran, which explained that the Veterans Law Judge who presided over his hearing was no longer available to participate in the appeal and offered the Veteran a hearing before a different Veterans Law Judge; otherwise, the case would be reassigned. In December 2015, the Veteran responded that he did not want another hearing. Thus, the Board will proceed with the matter on appeal. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The claim of service connection for residuals of histoplasmosis is considered reopened, and that reopened claim as well as the other service connection issues on appeal are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.

The issue of service connection for a psychiatric disorder, to include anxiety and depression, has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 


FINDINGS OF FACT

New evidence that tends to substantiate the claim of service connection for residuals of histoplasmosis, to include total legal blindness, has been received since a final May 2008 rating decision that denied service connection for that claim.


CONCLUSION OF LAW

New and material evidence has been received, and the claim of service connection for residuals of histoplasmosis, to include total legal blindness, is reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

A decision of the RO becomes final and is not subject to revision on the same factual basis unless a notice of disagreement is filed within one year of the notice of the decision, or new and material evidence is received during the appeal period after the decision. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156(b), 20.302, 20.1103 (2015). If a claim of entitlement to service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C.A. § 5108 (West 2014); see Manio v. Derwinski, 1 Vet. App. 140, 145 (1991).

VA must review all of the evidence submitted since the last final rating decision in order to determine whether the claim may be reopened. See Hickson v. West, 12 Vet. App. 247, 251 (1999). For purposes of determining whether new and material evidence has been received to reopen a finally adjudicated claim, the recently submitted evidence will be presumed credible. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

New evidence is defined as existing evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2015).

Historically, the Veteran filed a claim of service connection for residuals of histoplasmosis in January 2008, which was denied in a May 2008 rating decision. The Veteran was notified of that decision in a May 29, 2008 letter. The Veteran did not submit a notice of disagreement or any additional evidence with respect to that claim within one year of that notification letter. Rather, the Veteran submitted a purported notice of disagreement with the May 2008 rating decision in August 2009; the AOJ informed the Veteran that the purported notice of disagreement was untimely and therefore they could not accept that document as a notice of disagreement in an August 2009 letter. See 38 C.F.R. §§ 20.201 (2015). Consequently, the AOJ reopened that claim of service connection for residuals of histoplasmosis and denied that claim on the merits in a December 2010 rating decision, which is the subject of this appeal.

As no new and material evidence was received during the appeal period following the May 2008 notification letter, the May 2008 rating decision became final. See 38 C.F.R. § 3.156(b); Buie v. Shinseki, 24 Vet. App. 242, 252 (2010). Likewise, as the Veteran did not submit a timely notice of disagreement within one year of the May 2008 notification letter, the May 2008 rating decision is final. See 38 C.F.R. §§ 20.200, 20.201, 20.1103 (2015). New and material evidence is therefore required to reopen the claim of service connection for residuals of histoplasmosis. See 38 U.S.C.A. § 5108 (West 2014); Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001); 38 C.F.R. § 3.156.

In December 2010, the Veteran submitted signed "medical opinion" statements from three private physicians, Drs. A.B.Y., D.N.F., and W.D.K.; all of those statements are exactly the same, except for handwritten notes in a provided-for-blank space in the form opinion to note the dates of treatment of the Veteran; the author of the form opinion is not known. That form opinion, in pertinent part, concluded that 

it is at least as likely as not (a 50/50 chance) that [the Veteran's] illness during boot camp was caused by exposure to the fungus H. capsulatum, or that his later duties aboard ship while in the military, which caused him to inhale bird dropping dust, ultimately caused or exacerbated his ocular histoplasmosis, resulting in his current vision loss.

In light of the provisions of Justus, as noted above, that VA must presume the credibility of statements in new and material evidence claims, the Board must ultimately find that the above evidence is new and material, and additionally raises the necessity of obtaining a VA examination. Thus, the Board must conclude that new and material evidence which tends to substantiate the Veteran's claim of service connection for residuals of histoplasmosis has been received in this case, and that claim is reopened. See 38 C.F.R. § 3.156(a); Shade v. Shinseki, 24 Vet. App. 110, 117 (2010) (medical evidence which indicates that a medical opinion is warranted is sufficient to reopen a claim).



ORDER

New and material evidence with respect to the claim of service connection for residuals of histoplasmosis, to include total legal blindness, has been received; that claim is reopened, and to this limited extent, the appeal of that issue is granted.


REMAND

The Board notes that the Veteran's previous representative indicated in several statements that the Veteran was receiving treatment at Mountain Home VA Medical Center. The Board notes that VA treatment records from that facility through March 2012 have been obtained and associated with the claims file; thus, it appears that there is several years' worth of VA treatment records which are outstanding at this time. Accordingly, a remand is necessary in order to obtain any outstanding VA treatment records, as well as any ongoing private treatment records which may exist with respect to the Veteran's service connection claims on appeal. See 38 U.S.C.A. § 5103A(b), (c); 38 C.F.R. § 3.159(b); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim).

Likewise, in an April 2013 statement, the Veteran indicated that the only income that he was receiving was from Social Security disability benefits; after review of the claims file, it does not appear that any records from the Social Security Administration have been obtained, nor has any attempt to obtain those records been made. Therefore, on remand, attempts to obtain those records must be made. See Golz v. Shinseki, 590 F.3d 1317, 1323 (Fed. Cir. 2010); see also Baker v. West, 11 Vet. App. 163, 169 (1998). 

Furthermore, with respect to the Veteran's bilateral hearing loss, the May 2011 audiological VA examiner opined that his bilateral hearing loss was less likely as not related to noise exposure in service because the Veteran had "normal hearing, bilaterally, at military service separation." The opinion is inadequate, as Hensley v. Brown, 5 Vet. App. 155, 157 (1993), makes clear that no objective evidence of having hearing loss during military service is not fatal to a service connection claim. The Board therefore finds that, on remand, a new VA audiological examination should be afforded to the Veteran in order to obtain an appropriate medical opinion. 

Likewise, the Veteran has indicated that he has several respiratory problems. The Veteran was given a respiratory VA examination in November 2012, at which time he was diagnosed with the respiratory condition of histoplasmosis, which the Board notes is an infection usually by inhalation of fungal spores; residuals of histoplasmosis is also already a claim on appeal. However, the Board notes that there appears to be other respiratory diagnoses, such as chronic obstructive pulmonary disease (COPD) as noted in some VA chest x-rays. In light of the examiner's failure to address any other respiratory disorders, the Board finds that examination to be inadequate. 

Moreover, the etiology of the Veteran's histoplasmosis has been opined upon by several private and VA physicians-none of which are infectious disease specialists-with varying opinions. (Although, the Board notes that 3 of those private opinions offered by Drs. A.B.Y., D.N.F. and W.D.K. are the same opinion, leading the Board to believe that those opinions were pre-drafted by some individual other than those doctors, and thus is not the actual opinion of those doctors.) Additionally, none of those opinions address the likelihood of exposure during military service versus the likelihood of exposure after service, namely due to the fact that histoplasmosis is endemic to the Missouri Valley region of the United States where the Veteran just so happens to reside. 

Based on the foregoing reasons, the Board finds that on remand the Veteran should be afforded VA examinations of his bilateral hearing loss, residuals of histoplasmosis, and respiratory disorders in order to obtain adequate examinations and medical opinions. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); see also Kowalski v. Nicholson, 19 Vet. App. 171, 179 (2005) (a VA examination must be based on an accurate factual premise). 

Accordingly, the case is REMANDED for the following action:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain any relevant VA treatment records from the Mountain Home VA Medical Center, or any other VA medical facility that may have treated the Veteran, since March 2012 and associate those documents with the claims file.

2. Ask the Veteran to identify any private treatment that he may have had for his bilateral hearing loss, pharyngitis, residuals of histoplasmosis including bilateral blindness, and respiratory disorders, which is not already of record. After securing the necessary releases, attempt to obtain and associate those identified treatment records with the claims file. If any identified records cannot be obtained and further attempts would be futile, such should be noted in the claims file and the Veteran should be notified so that he can make an attempt to obtain those records on his own behalf.

3. Obtain from the Social Security Administration, or other state agency administering disability benefits, the records pertinent to the Veteran's claim for disability benefits as well as the medical records relied upon in considering that claim. Any negative search should be noted in the record and communicated to the Veteran. Additionally, in the event of a negative search, if it is determined that additional research requests would be futile, then a memorandum of unavailability should be drafted and added to the record.


4. Schedule the Veteran for a VA audiological examination in order to determine whether any demonstrated bilateral hearing impairment is related to military service or service-connected tinnitus. The claims folder must be made available to and be reviewed by the examiner in conjunction with the examination. All tests deemed necessary, including audiometric evaluation, should be conducted. Testing should be conducted so as to determine whether the Veteran meets the definition of impaired hearing. 38 C.F.R. § 3.385 (2015).

The examination report should also discuss the Veteran's complaints of hearing loss and tinnitus and their impact on his activities of daily living and occupational functioning. 

The examiner should address the Veteran's history of hearing loss and tinnitus, to include when the onset of symptomatology began, as well as his history of noise exposure before, during, and after military service. 

For any hearing impairment identified in accordance with § 3.385, the examiner should opine whether it is more likely, less likely, or at least as likely as not (50 percent or greater probability) caused by or otherwise related to military service, to include any noise exposure alleged therein during basic training or training exercises aboard any military vessels. 

Then, the examiner must also opine whether the Veteran's bilateral hearing impairments was more likely, less likely, or at least as likely as not (a) caused by; or, (b) aggravated (e.g., permanently worsened beyond the normal progression of the disease) by his service-connected tinnitus. 

The examiner must take as conclusive fact that the Veteran has conceded acoustical trauma to ship gunfire during training exercises, and that such conceded noise exposure has already resulted in service connection for tinnitus.

The examiner should also specifically address the Veteran's lay statements regarding the onset of symptomatology and continuity of symptomatology since onset, as well as the lay statements from his spouse and friends in the claims file. The examiner should additionally address the previous VA examiner's inadequate opinion, as well as any other pertinent evidence in the claims file.

The examiner should focus specifically on whether the noise exposure in service is the cause of any current hearing impairment, as well as whether such hearing loss began during or was initially manifested during military service. Facts and medical principles relied on to arrive at an opinion should be set forth, including any principles relating to the possibility of a delayed onset of loss of acuity due to noise exposure in service. 

All opinions must be accompanied by a clear rationale. If the examiner opines that any of the above questions cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

5. Schedule the Veteran for a VA examination with an infectious disease specialist in order to determine the nature and etiology of the Veteran's residuals of histoplasmosis, to include total legal blindness. The claims folder must be made available to and be reviewed by the examiner in conjunction with the examination. All tests deemed necessary should be conducted and the results reported in detail.

After review of the claims file and examination of the Veteran, the examiner should state all of the residuals of histoplasmosis found, including any ocular and respiratory disorders/symptomatology. 

For any non-histoplasmosis symptomology and/or diagnosed respiratory disorders, the examiner should address all other respiratory disorders found in any VA or private treatment records, and address whether such were mis- or inappropriate diagnoses, or whether such conditions once existed but have since resolved. The examiner should explain any and all findings and conclusions reached.

Then, the examiner should opine whether any residuals of histoplasmosis more likely, less likely, or at least as likely as not (50 percent or greater probability) began in or is otherwise the result of military service, to include any exposure to exposure to bird droppings during boot camp or aboard naval vessels while cleaning the deck. 

The examiner should take as conclusive fact that the Veteran served aboard naval vessels during service, which involved cleaning the deck/hull of any bird droppings, as well as exposure to bird droppings during boot camp while resting on runs.

The examiner should additionally take as conclusive fact that the Veteran's residency since his diagnosis with histoplasmosis has been in the State of Tennessee and the Missouri Valley region of the United States, a region in which histoplasmosis is endemic to that region.

The examiner should specifically address the Veteran's lay statements regarding the onset of symptomatology and continuity of symptomatology since onset. 

The examiner should additionally address the medical opinions of record, including the December 2010 form opinions from Drs. A.B.Y., D.N.F., and W.D.K., as well as the positive VA medical opinions from the November 2012 and May 2013 examiners, as well as the negative opinion from the June 2013 examiner. 

The examiner should additionally address the submitted internet articles and treatise evidence respecting histoplasmosis, as well as any other pertinent evidence in the claims file, as appropriate.

Ultimately, the examiner should focus on the likelihood that the Veteran's histoplasmosis was contracted as a result of his military service, including any bird dropping exposure therein, as opposed to being contracted post-service while living in a region of the country to which histoplasmosis is endemic to the region.

All opinions must be accompanied by an explanation. If the examiner opines that any of the above questions cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

6. Schedule the Veteran for a VA examination with an appropriate specialist/pulmonologist in order to determine the nature and etiology of any respiratory disorders. The claims folder must be made available to and be reviewed by the examiner in conjunction with the examination. All tests deemed necessary should be conducted, including x-rays, and the results reported in detail.

After review of the claims file and examination of the Veteran, the examiner should state all of the respiratory disorders found, including chronic obstructive pulmonary disease (COPD) if such is present. 

Additionally, the examiner should specifically address whether any respiratory symptomatology that is present is a separate and distinct disorder, or rather whether such are merely symptoms manifest of residuals of the Veteran's histoplasmosis. 

For any non-histoplasmosis symptomology and/or diagnosed respiratory disorders, the examiner should address all other respiratory disorders found in any VA or private treatment records, and address whether such were mis- or inappropriate diagnoses, or whether such conditions once existed but have since resolved. The examiner should explain any and all findings and conclusions reached.

Then, for any diagnosed respiratory disorders found, the examiner should opine whether such more likely, less likely, or at least as likely as not (50 percent or greater probability) began in or is otherwise the result of military service, to include any exposure to asbestos as a result of his service aboard naval vessels and/or any exposure to bird droppings during boot camp or aboard naval vessels while cleaning the deck. 

The examiner should take as conclusive fact that the Veteran served aboard naval vessels during service, which may have contained asbestos, and should also take as conclusive fact that the Veteran's service aboard those ships involved cleaning the deck/hull of any bird droppings, as well as exposure to bird droppings during boot camp while resting on runs.

The examiner should specifically address the Veteran's lay statements regarding the onset of symptomatology and continuity of symptomatology since onset. The examiner should additionally address the any other pertinent evidence in the claims file, as appropriate.

All opinions must be accompanied by an explanation. If the examiner opines that any of the above questions cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

7. Following any additional indicated development, the AOJ should review the claims file and readjudicate the Veteran's claims of service connection for bilateral hearing loss, residuals of histoplasmosis, pharyngitis, and respiratory disorders. If the benefits sought on appeal remain denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs