Citation Nr: 1205189 
Decision Date: 02/10/12 Archive Date: 02/23/12

DOCKET NO. 10-14 536 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for a right shoulder disability.

2. Entitlement to service connection for a right knee disability.

3. Entitlement to service connection for a left knee disability.

4. Entitlement to an initial compensable evaluation for bilateral hearing loss for the period through July 10, 2011.

5. Entitlement to an initial compensable evaluation for bilateral hearing loss for the period beginning July 11, 2011.


REPRESENTATION

Veteran represented by: Tennessee Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

S. Becker, Associate Counsel


INTRODUCTION

The Veteran had active service from April 1968 to April 1971 and from September 1974 to November 1994.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. Service connection for a right shoulder condition, bilateral knee condition, and a lower back condition was denied therein. Service connection was granted for bilateral hearing loss and tinnitus. An initial noncompensable evaluation was assigned for bilateral hearing loss, while tinnitus was assigned an initial 10 percent evaluation.

An appeal was initiated by the Veteran for each of these determinations with the exception of that regarding tinnitus. This appeal was perfected by him for a right shoulder condition, bilateral knee condition, and a lower back condition only. Service connection was granted and an initial 10 percent evaluation assigned for degenerative arthritis of the lumbar spine with spinal stenosis in a June 2011 rating decision. As this represented a full grant of the benefit sought, the low back/back is no longer an issue on appeal.

On July 11, 2011, the Veteran testified at a Travel Board hearing held before the undersigned Veterans Law Judge. A transcript of the hearing has been associated with the claims file. This transcript shows that the Veteran's appeal was accepted to include bilateral hearing loss as an issue in addition to those issues addressing his right shoulder and knees.

This matter last was adjudicated in a March 2010 statement of the case. Pertinent evidence in the form of service treatment records thereafter was submitted by the Veteran. They were accompanied by a statement in which he waived his right to have the agency of original jurisdiction (AOJ), which in this case is the RO, initially consider them. The Board accordingly has jurisdiction to consider the records in the first instance here. See 38 C.F.R. § 20.1304(c). 

The issue regarding bilateral hearing loss, specifically entitlement to an initial compensable evaluation for it, has been separated into two such issues concerning differing periods on appeal based on the evidence of record.

Based on review of the Veteran's claims file in addition to his Virtual VA "eFolder," the following determination is made with respect to the issue of entitlement to a compensable evaluation for bilateral hearing loss for the period through July 10, 2011.

The issues of entitlement to service connection for a right shoulder disability, for a right knee disability, and for a left knee disability as well as the issue of entitlement to a compensable evaluation for bilateral hearing loss for the period beginning July 11, 2011, are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ/RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.





FINDING OF FACT

Results from a December 2008 VA audiological examination corresponds to auditory acuity level I in the right ear and II in the left ear.


CONCLUSION OF LAW

The criteria for an initial compensable evaluation for bilateral hearing loss for the period through July 10, 2011, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.85, 4.86, Diagnostic Code 6100 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000, VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate his claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The United States Court of Appeals for Veterans Claims (Court) held in Dingess v. Nicholson, 19 Vet. App. 473 (2006), that 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) also require VA to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded.

Notice must be provided prior to an initial unfavorable decision on a claim by the AOJ. Pelegrini, 18 Vet. App. at 112.

As noted above, the issue regarding the Veteran's bilateral hearing loss initially was one of entitlement to service connection. He was informed via letter dated in July 2008 of the evidence required to establish service connection, the evidence not of record necessary to substantiate his claim for service connection, and his and VA's respective duties for obtaining evidence. This letter also informed him of how VA generally determines disability evaluations, which was noted to include consideration of the impact on employment, and effective dates. 

Neither the Veteran nor his representative has alleged prejudice with respect to notice. None is found by the Board. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009); Goodwin v. Peake, 22 Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Indeed, VA's duty to notify has been satisfied. The July 2008 letter predated the initial adjudication by the AOJ/RO in December 2008. All notice elements were fully addressed by it. Nothing more was required. 

Pursuant to the duty to assist, VA is required to aid the claimant in the procurement of service treatment records and other pertinent treatment records, whether or not they are in Federal custody, as well as provide a medical examination and/or obtain a medical opinion when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

Service treatment records regarding the Veteran, some of which were obtained by VA and some of which he submitted on his own behalf, ultimately were associated with the claims file. No VA treatment records or relevant private treatment records (those private treatment records that were submitted related only to the Veteran's low back/back) have been associated with the claims file. VA's duty to assist in obtaining such records is not applicable, however, as the Veteran has not identified any. See 38 U.S.C.A. § 5103A(b). 

A VA audiological examination was afforded to the Veteran in December 2008. The examiner interviewed him regarding his relevant symptomatology. Noted in this regard was poor speech understanding, particularly trouble understanding conversations in meetings and while watching television. Thus, the examination included a "full description of the effects of disability upon the person's ordinary activity," as required by the Court in Martinak v. Nicholson, 21 Vet. App. 447 (2007). Even if this description was somehow defective, the Veteran bears the burden of demonstrating prejudice resulting therefrom. Id. Neither he nor his representative has made, or even attempted to make, any such demonstration here. 

In addition to obtaining the Veteran's descriptive report of his relevant symptomatology, the examiner who conducted the December 2008 VA examination reviewed his claims file and medical records. The examiner further conducted a physical assessment as well as relevant diagnostic testing. Each of the above actions was fully documented by both examiners in an examination report. The Board accordingly finds, for each of the aforementioned reasons, that the December 2008 VA audiological examination is adequate. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (defining adequacy with respect to medical examinations and opinions as those providing sufficient detail so that the Board can perform a fully informed evaluation of the claims).

Significantly, neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional development necessary for fair adjudication that has not been undertaken. The Board therefore finds that VA's duty to assist has been satisfied. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

As both the duty to notify and the duty to assist have been fulfilled, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Higher Evaluation

The Veteran seeks a higher disability evaluation for his bilateral hearing loss. He contends that this disability was more severe than contemplated by a noncompensable rating for the period through July 10, 2011.

A. Schedular

Disability evaluations are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4. Separate Diagnostic Codes identify various disabilities and the criteria for specific ratings for the disabilities. The percentage ratings represent as far as practicably can be determined the average impairment in earning capacity due to a service-connected disability. 38 U.S.C.A. § 1155. The evaluation assigned is determined by comparing the extent to which a Veteran's service-connected disability impairs his ability to function under the ordinary conditions of daily life, as demonstrated by the Veteran's symptomatology, with the schedule of ratings. Id.; 38 C.F.R. § 4.10; Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Examination reports must be interpreted, and if necessary reconciled, into a consistent picture so that the evaluation rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2. If two evaluations are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. However, any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The benefit of the doubt similarly shall be given to the Veteran when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). As such, the Veteran prevails when the evidence supports his claim or is in relative equipoise but does not prevail when the preponderance of the evidence is against the claim. Id.

When an appeal arises from an initially assigned rating, as is the case here, consideration must be given to whether staged ratings are warranted. Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which a service-connected disability exhibited symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of a distinctive rating for each of the time periods is for application.

Bilateral hearing loss is rated pursuant to 38 C.F.R. §§ 4.85 and 4.86, Diagnostic Code 6100. Examinations for hearing impairment must be conducted by a state licensed audiologist. 38 C.F.R. § 4.85(a). Hearing acuity is measured by the results of a controlled speech discrimination test (Maryland CNC) and a pure tone audiometry test in the frequencies of 1000, 2000, 3000 and 4000 cycles per second (hertz). 38 C.F.R. § 4.85(a) and (d). Examinations are conducted without the use of hearing aids. Id. The rating schedule establishes eleven auditory acuity levels to evaluate the degree of hearing loss disability based on the examination results, ranging from level I for essentially normal acuity through level XI for profound deafness. 38 C.F.R. § 4.85(b) and (c). The auditory acuity level usually is derived from Table VI, which considers both pure tone threshold average and percent of speech discrimination. 38 C.F.R. § 4.85(b). However, Table VIa, which considers only pure tone threshold average, is used when the examiner certifies that use of speech discrimination test results is not appropriate for reasons such as language difficulties or inconsistent scores. 38 C.F.R. § 4.85(c).

38 C.F.R. § 4.86 additionally specifies two exceptional patterns of hearing impairment. The first exceptional pattern exists when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 hertz) is 55 decibels or more. 38 C.F.R. § 4.86(a). In this circumstance, the rating specialist must determine the auditory acuity level for each ear from either Table VI or Table VIa, whichever results in the higher level. Id. The second exceptional pattern exists when the pure tone threshold is 30 decibels or less at 1000 hertz and 70 decibels or more at 2000 hertz. 38 C.F.R. § 4.86(b). Here also, the auditory acuity level for each ear will be selected from either Table VI or Table VIa, whichever results is the higher level. Id. However, in this instance that level then will be elevated to the next higher level. Id.

Based on the intersection point of the auditory acuity level assigned to each ear, a disability percentage rating for hearing impairment is derived from Table VII. 38 C.F.R. § 4.85(e); see also Bruce v. West, 11 Vet. App. 405 (1998).

The Board notes at the outset that although the entire claims file has been reviewed, only the most salient and relevant evidence is discussed below. See Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000) (holding that the Board must review the entire record, but does not have to discuss each piece of evidence). 

Pure tone threshold levels, in decibels, were found as follows at the December 2008 VA audiological examination:


HERTZ

1000
2000
3000
4000
RIGHT
40
45
65
65
LEFT
50
70
70
80

Pure tone threshold levels averaged 54 (rounded from 53.75) decibels for the right ear and 68 (rounded from 67.50) decibels for the left ear. Use of the Maryland CNC speech discrimination test revealed a speech recognition ability of 100 percent in the right ear and 92 percent in left ear. Bilateral hearing within normal limits sloping to severe sensorineural hearing loss both was found and diagnosed. 

The pure tone threshold levels from this examination do not represent an exceptional pattern of hearing loss pursuant to 38 C.F.R. § 4.86(a) in either ear. Accordingly, the auditory acuity level for each ear is derived only from Table VI. The examination results for the right ear correspond to an auditory acuity level of I under this table. For the left ear, the examination results also correspond to an auditory acuity level of II. The intersection point of auditory acuity level I for the right ear and auditory acuity level II for the left ear under Table VII shows that the Veteran's bilateral hearing loss warrants a noncompensable evaluation.

Evaluations for a hearing loss disability are derived by mechanical application of the rating criteria in 38 C.F.R. §§ 4.85 and 4.86, Diagnostic Code 6100, to the numeric auditory acuity level assigned as a result of audiological testing. Lendenmann v. Principi, 3 Vet. App. 345 (1992). Stated another way, very little judgment is involved because audiometric tests are dispositive evidence. A noncompensable disability rating is derived here in light of the December 2008 VA audiological examination. No other relevant evidence through July 10, 2011, is of record. The preponderance of the evidence therefore is against a compensable disability evaluation for the Veteran's service-connected bilateral hearing loss for any portion of the period on appeal as of this date. Accordingly, staged ratings are not appropriate and the benefit of the doubt rule does not apply.

B. Extraschedular

The above determinations continuing the Veteran's noncompensable evaluation for bilateral hearing loss for the period through July 10, 2011, is based on application of pertinent provisions of the VA's Schedule for Rating Disabilities. There is no indication that referral is warranted for consideration of the assignment of an evaluation for this disability during the aforementioned period on an extraschedular basis. See 38 C.F.R. § 3.321(b).

In Thun v. Peake, 22 Vet. App. 111 (2008), the Court clarified the analytical steps necessary to determine whether referral for such consideration is warranted. A determination of whether the evidence presents such an exceptional disability picture that the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology first must be made by the RO or Board. If the rating criteria are inadequate, the RO or Board must proceed to determine whether the Veteran's exceptional disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration.

Neither the Veteran nor his representative expressly raised the matter of entitlement to an extraschedular rating. There further is no showing from the record that the Veteran's bilateral hearing loss disability picture during any portion of the period on appeal as of July 10, 2011, is not contemplated adequately by the applicable schedular rating criteria discussed above. 

The Veteran has complained of problems including poor speech understanding to include trouble understanding conversations in meetings and while watching television. He is competent to do so because these symptoms are within his personal knowledge. Layno v. Brown, 6 Vet. App. 465 (1994) (concluding that lay witnesses are competent to provide testimony or statements relating to facts of events that are within his/her realm of personal knowledge or are observed by him/her). He also is credible in this regard, as there is no reason to doubt him. See Caluza v. Brown, 7 Vet. App. 498 (1995) (holding that the credibility of lay evidence generally can be assessed by a showing of interest, bias, or inconsistent statements); Macarubbo v. Gober, 10 Vet. App. 388 (1997) (listing inconsistent statements, internal inconsistency of statements, inconsistency with other evidence of record, facial implausibility, bad character, interest, bias, self-interest, malingering, desire for monetary gain, and witness demeanor as factors to determine lay evidence credibility). 

The schedular rating criteria, as they are based on hearing acuity at various frequencies and on the ability to understand spoken words, contemplate problems hearing sounds as well as problems hearing spoken words such as those competently and credibly reported by the Veteran. These criteria provide for higher ratings, but, as was set forth above, a noncompensable evaluation adequately describes the severity of the Veteran's disability through July 10, 2011.

Given that the schedular rating criteria are adequate, the Board finds that the Veteran did not manifest an exceptional bilateral hearing loss disability picture for the period on appeal through July 10, 2011. Discussion of whether he exhibited related factors such as marked interference with employment or frequent periods of hospitalization in this timeframe therefore is unnecessary. Further, referral for consideration of the assignment of a disability evaluation on an extraschedular basis is not warranted. See Thun, 22 Vet. App. at 111; see also Bagwell v. Brown, 9 Vet. App. 337 (1996); Floyd v. Brown, 9 Vet. App. 88 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).


ORDER

An initial compensable evaluation for bilateral hearing loss for the period through July 10, 2011, is denied.


REMAND

The issues of entitlement to service connection for a right shoulder disability, for a right knee disability, and for a left knee disability as well as entitlement to an initial compensable evaluation for bilateral hearing loss for the period beginning July 11, 2011, unfortunately must be remanded. Although the Board sincerely regrets the additional delay, adjudication cannot proceed without further development.


I. Right Shoulder, Right Knee, and Left Knee

VA's duty includes providing a medical examination and/or obtaining a medical opinion when necessary, as noted above. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4). A medical examination and/or medical opinion is necessary when there is: (1) competent evidence that the Veteran has a current disability or persistent or recurrent symptoms of a disability; (2) evidence establishing that he suffered an event, injury or disease in service or manifested certain diseases during an applicable presumption period; (3) an indication that the current disability or symptoms may be associated with service or with another service-connected disability; and (4) insufficient competent medical evidence of record to make a decision on the claim. Id.; see also McLendon v. Nicholson, 20 Vet. App. 79 (2006); Wells v. Principi, 326 F.3d 1381 (Fed. Cir. 2003).

The third requirement establishes a low threshold. The types of evidence that "indicate" that a current disability "may be associated" with military service include, but are not limited to, medical evidence that suggests a nexus but is too equivocal or lacking in specificity to support a decision on the merits and credible evidence of continuity of symptomatology such as pain or other symptoms capable of lay observation. McLendon, 20 Vet. App. 79.

To date, VA has neither afforded the Veteran a medical examination nor solicited a medical opinion regarding his entitlement to service connection for a right shoulder disability, for a right knee disability, or for a left knee disability. The Board finds that the provision of such a medical examination and opinion is required in this case for each of these disabilities.

Service treatment records dated during the Veteran's first period of service are silent with respect to his right shoulder and knees. Service treatment records dated during the Veteran's second period of service, however, are not. 

The Veteran reported right shoulder pain, knee pain, and his knees occasionally almost giving out in November 1981. He also reported a fall in May while playing baseball. Traumatic arthritis of the right shoulder initially was diagnosed after a negative physical assessment. After X-rays came back negative and another physical assessment revealed a non-tender old separation of the right acromioclavicular (AC) joint, a diagnosis of old right AC separation was made. Findings of AC tenderness as well as full range of motion with pain and crepitus of the right shoulder and a negative physical assessment of the knees except for slight signs of chondromalacia a few days later in November 1981 resulted in diagnoses of second degree AC separation and chondromalacia patella. 

In October 1986, the Veteran complained of right shoulder pain and bony protrusions below his patellae with pain on direct pressure. He denied such a knee history as a teenager. Bony protrusions at the proximal tibia of both knees tender to palpation and tenderness of the right shoulder AC joint was present upon physical assessment. X-rays, which showed a slight condensation of cancellous bone immediately cranial to the tuberculum majus of the right shoulder, fragmentation with exostosis-like prominence at the tibial tuberositas and bony spurs cranial to the posterior aspect of the medial condyle of the knees, and bony spurs on the ventral, cranial, and caudal pole of the right patella, were interpreted to be right shoulder within normal limits and questionable sequalae of Osgood Schlatter's disease of the knees. Right shoulder strain and knees status post Osgood Schlatter's disease were diagnosed. 

The Veteran's report of dislocating his right shoulder in 1981 with occasional discomfort since was noted in May 1988. 

X-rays were taken of the Veteran's right shoulder in September 1989 after he complained of right arm numbness. They were normal. 

In October 1989, the Veteran complained of a painful right shoulder. He indicated that he thought he had subluxed it when he fell eight to nine years prior. Physical assessment revealed prominence and tenderness of the right AC joint. It also revealed good range of motion with mild crepitation, good strength, and intact reflexes and sensation. X-rays were noted to show AC joint irregularity. The diagnoses rendered was probably early degenerative changes in the right AC joint secondary to previous trauma and rotator cuff probably intact.

In November 1989, the Veteran reported pain, loss of sensation, numbness, and tingling in his right shoulder. Full range of motion, good strength and pulses, as well as a non-tender bony deformity of the AC joint was noted upon physical assessment. Rule out impingement syndrome was diagnosed.

Knee bumps were among the Veteran's complaints in March 1990. Upon physical assessment, exostotic tibial tuberosities were found. Also found was full range of motion and a stable gait. A diagnosis of chondromalacia was rendered.

At his July 1994 separation examination, the Veteran reported a painful or "trick" shoulder. He specifically reported having dislocated his right shoulder in 1980 and still having soreness.

The Veteran testified at the July 11, 2011, Travel Board hearing that he injured his right shoulder in a fall while playing baseball during service in 1980. He noted that pain, loss of strength, and numbness in this shoulder has been a constant lingering problem ever since. With respect to his knees, the Veteran testified that he first noticed protruding lumps during service in 1974 or 1975. He indicated that he thereafter had knee pain as well as that the lumps did not go away. The Veteran finally testified that he had not sought any treatment for his right shoulder or his knees following his separation.

In light of the above, it is undisputed that the Veteran suffered an in-service event, injury, or disease related to his right shoulder and knees. No recent treatment records, whether VA or private, have been associated with the claims file to document the existence of a current right shoulder, right knee, and/or left knee disability. Yet the Veteran has reported that he currently experiences symptoms which may be indicative of a disability such as pain in both the right shoulder and the knees, numbness and loss of strength in the right shoulder, and lumps on the knees. He further has reported that these symptoms have persisted/continued since they first manifest during service. 

The Veteran is competent in the above regards because his symptoms have been and are within his personal experience. See Layno, 6 Vet. App. at 465. He also appears, at first glance, to be credible in the above regards. No reason is found to doubt that the Veteran currently has right shoulder and bilateral knee symptoms. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (noting that the absence of contemporaneous medical evidence is one factor in evaluating the credibility of lay evidence but that it cannot be the only factor for a determination that such evidence lacks credibility); see also Caluza, 7 Vet. App. at 498; Macarubbo, 10 Vet. App. at 388. There is some support that he is credible in asserting persistent/continuous such symptoms. Service treatment records indeed show repeated complaints/reports concerning the Veteran's right shoulder and knees. 

The above raises questions which must be answered before a decision can be made regarding the Veteran's entitlement to service connection for a right shoulder disability, for a right knee disability, and for a left knee disability. The precise nature of the current disability of the right shoulder or of either or both knees, if any such disability exists, is unknown. Also unknown is whether each such disability found is associated with the Veteran's service. A medical examination complete with opinions concerning these questions accordingly is needed. So that this can be undertaken, a remand is required.

II. Bilateral Hearing Loss for the Period Beginning July 11, 2011

The duty to assist the Veteran in substantiating his claim also mandates that any VA medical examination and/or medical opinion obtained be adequate. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120 (2007); see also Hayes v. Brown, 9 Vet. App. 67 (1996). A medical examination and/or opinion is adequate when it allows the Board to perform a fully informed evaluation of the claim. Barr v. Nicholson, 21 Vet. App. 303 (2007). 

As such, the examination and/or opinion must be contemporaneous in that it portrays the current state of the disability at issue if it is service-connected. Snuffer v. Gober, 10 Vet. App. 400 (1997) (concluding that a Veteran was entitled to a new examination after noting that two years had passed since his last VA examination and that the Veteran contended his disability had increased in severity); Caffrey v. Brown, 6 Vet. App. 377 (1994) (holding that an examination too remote for rating purposes cannot be considered "contemporaneous"); Allday v. Brown, 7 Vet. App. 517 (1995); VAOPGCPREC 11-95 (1995), 60 Fed. Reg. 43,186 (1995). 

The Veteran underwent a VA audiological examination in December 2008, as set forth above. To reiterate, bilateral hearing within normal limits sloping to severe sensorineural hearing loss both was found and diagnosed. 

At the July 11, 2011, Travel Board hearing, the Veteran testified that his bilateral hearing loss had worsened since the December 2008 VA audiological examination. He further testified that his wife told him his bilateral hearing loss had worsened since then.

The Board finds that the December 2008 VA audiological examination now is not contemporaneous. It was conducted over three years ago and thus is of considerable age. As such, it may not portray the current state of the Veteran's bilateral hearing loss. He indeed indicated on July 11, 2011, that he and his wife perceive that his bilateral hearing loss is worse than it was at the time of the examination. 

The Veteran is competent in the above regards because his symptoms as well as what his wife relates to him are within his personal experience. See Layno, 6 Vet. App. at 465. He also appears to be credible in the above regards because, at first glance, no reason is found to doubt him. See Buchanan, 451 F.3d at 1331; Caluza, 7 Vet. App. at 498; Macarubbo, 10 Vet. App. at 388.

Absent current evidence, a fully informed evaluation of the Veteran's entitlement to an initial compensable evaluation for bilateral hearing loss for the period beginning July 11, 2011, cannot be performed. Another appropriate VA examination therefore must be scheduled. A remand is necessary to accomplish this task.

Accordingly, the case is REMANDED for the following action:

1. Review the claims file and undertake any additional records development indicated. This shall include obtaining and associating with the claims file updated VA treatment records, if any, regarding the Veteran. This also shall include obtaining and associating with the claims file, after securing any necessary authorization, additional pertinent records identified by him during the course of this remand.

2. After completion of the above development, arrange for the Veteran to undergo an appropriate VA examination regarding the nature, extent/severity, onset, and etiology of any right shoulder disability, right knee disability, and/or left knee disability found to be present. The claims file shall be made available to and reviewed by the examiner. The examiner then shall obtain from the Veteran a full relevant medical history and a thorough description of his past and current relevant symptomatology. All tests, studies, or evaluations deemed necessary next shall be performed. The examiner thereafter shall diagnose all right shoulder, right knee, and/or left knee disabilities manifested by the Veteran. For each disability diagnosed, the examiner finally shall opine with respect to etiology as to whether it is at least as likely as not (a 50 percent or greater probability) that the disability is related to the Veteran's service, whether incurred in or otherwise attributable to such service. A complete rationale, to include specific comment on the pertinent medical and lay evidence of record, shall be provided for each diagnosis made and etiology opinion rendered. All of the above actions shall be documented fully in an examination report.

3. Also after completion of the development in the first paragraph, arrange for the Veteran to undergo an appropriate VA examination to determine the current nature and extent/severity of his bilateral hearing loss. The claims file shall be made available to and reviewed by the examiner. The examiner then shall obtain from the Veteran a thorough description of his audiological symptoms, including the effects of such symptoms on his occupational functioning and daily activities, from July 11, 2011, to present. A Maryland CNC controlled speech discrimination test and a pure tone audiometry test, along with all other tests, studies, or evaluations deemed necessary, next shall be performed. For any opinion rendered, a complete rationale, to include specific comment on the pertinent medical and lay evidence of record, shall be provided. Each of the above actions shall be documented fully in an examination report.

4. Finally, readjudicate the issues of entitlement to service connection for a right shoulder disability, for a right knee disability, and for a left knee disability as well as entitlement to an initial compensable evaluation for bilateral hearing loss for the period beginning July 11, 2011. If the benefit is not granted in full for one or more of these issues, the Veteran and his representative shall be provided with a supplemental statement of the case and afforded a reasonable opportunity to respond.

The Veteran has the right to submit additional evidence and argument on the issues the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs